UNITED STATES DISTRICT COURT

FILED

2003 NOV 26 P 1: 26

US DISTRICT COURT HARTFORD CT

DISTRICT OF CONNECTICUT

EDWARD BROWN, ET AL : NO.: 3:01CV2374 (CFD)

v. :

TOWN OF STONINGTON, ET AL : NOVEMBER 26, 2003

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DIRECTED TO EDWARD BROWN**

## I. BACKGROUND

The plaintiff, Edward Brown, has brought this action by way of a two count Amended Complaint dated October 29, 2002. This action arises out of the plaintiff's arrest on June 29, 2001 at the Stonington Town Docks. The plaintiff went to the Stonington Town Docks on the evening of June 29, 2001, accompanied by the co-plaintiff, Jeffrey Menard, where Brown intended to dive for lobsters. Police were called to the scene by witnesses, Cheryl and Phillip Henry, who reported a problem at the docks. The subject dock had a clearly posted sign which read, "No Scuba Diving or Swimming at Town Dock."

Upon arrival at the scene, the officers observed that both Menard and his clothing were wet. Menard conceded that he had been in the water. Brown, who was still underwater diving for lobsters at the time police arrived on the scene, refused to exit the water with the bag he was carrying despite being ordered to do so by the officers. Brown was belligerent and proceeded to empty the bag he was carrying into the water despite repeated orders by the officers to refrain from doing so.

Menard was arrested and charged with Breach of Peace pursuant to Conn. Gen. Stat. §53a-181, and Criminal Trespass pursuant to Conn. Gen. Stat. §53a-109, and was released on a Promise to Appear.

Brown was charged with Breach of Peace pursuant to Conn. Gen. Stat. §53a-181, Criminal Trespass pursuant to Conn. Gen. Stat. §53a-109, Interfering with an Officer pursuant to Conn. Gen. Stat. §53a-167(a), Possession of Marijuana pursuant to Conn. Gen. Stat. §21a-279(c), Possession of Drug Paraphernalia pursuant to Conn. Gen. Stat. §21a-267, and Scuba Diving Without Proper Flags pursuant to Conn. Gen. Stat. §15-135(a), and released on a $1,000 non-surety bond.

The defendants hereby incorporate by reference the Statement of Facts contained in the attached Local Rule 56(a)1 Statement which provides a more detailed background of the incident.

In the First Count of his Amended Complaint, Brown alleges that he was wrongfully arrested and charged with criminal trespass, breach of peace, interfering with an officer, possession of marijuana, possession of drug paraphernalia, and scuba diving without proper flags. (Amended Complaint, Count One, ¶10). Brown further alleges a myriad of federal and state constitutional claims. Specifically, Brown alleges that:

> the police defendants deprived [him] of [his] rights to freedom of speech, freedom to petition for redress of grievances, freedom from unreasonable arrest, search and seizure, freedom from warrantless arrest, freedom from arrest without probable cause, freedom from the use of unreasonable force by a police officer, freedom from malicious prosecution, and due process of law. All of these rights are secured to the plaintiffs by the provisions of the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution and by Title 42 U.S.C. §§1983 and 1988, and the Connecticut Constitution, Article First, §§1, 4, 7, 8, 9, 10, 11 and 20.

(Amended Complaint, Count One, ¶23).

Brown also alleges numerous state law claims, namely that the defendants, "deprived [him] of [his] rights to be free from assault and battery, false imprisonment, abuse of process, malicious prosecution, and intentional infliction of emotional distress." (Amended Complaint, Count One, ¶24).

Additionally, in the First Count of the Amended Complaint, Brown alleges indemnification by the Town of Stonington, pursuant to Conn. Gen. Stat. §7-465, for the actions of the named defendants as set forth above. (Amended Complaint, Count One, ¶4). Finally, Brown appears to allege a failure to train and supervise claim against Chief of Police David Erskine and Police Captain Jerry Desmond. (Amended Complaint, Count One, ¶¶7-8).

The Second Count of the Amended Complaint alleges a claim for intentional infliction of emotional distress as to each defendant. (Amended Complaint, Count Two).

The defendants now move for summary judgment as to the plaintiffs' Amended Complaint in its entirety.

## II. STANDARD OF REVIEW ON SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A "material fact" is one whose resolution will affect the ultimate determination of the case. Id. In determining whether a material issue of fact exists, the Court must

resolve all ambiguities and draw all inferences against the moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3rd Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Samuels v. Smith, 839 F. Supp. 959, 962 (D. Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. at 2510; see also, Knight v. United States Fire Insurance Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 763 (1987); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 265 (1986). "Neither courts nor defendants should be subjected to trials which can be little more than harassment." Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. See Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987). Where evidence is

submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial. See First National Bank of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the District Court properly relied on documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Beyene v. Coleman Security Servies, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stasny Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).

## III. APPLYING THE SUMMARY JUDGMENT STANDARD FOR QUALIFIED IMMUNITY

Qualified immunity shields police officers from suits for damages under 42 U.S.C. §1983, unless their actions violate clearly established rights of which an objectively reasonable official would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. [It] is an immunity from suit rather than a mere defense to liability . . . " Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (citations omitted; internal quotation marks omitted). The summary judgment standard to be applied in cases involving the affirmative defenses of qualified immunity was articulated in Lennon v. Miller, 66 F.3d 416, 422 (2d Cir. 1995), as follows:

> To establish qualified immunity, a defendant must demonstrate either that his conduct did not violate any of the plaintiff's . . . clearly established rights, . . . that would have been known to a reasonable person or that it was objectively reasonable for him to believe that his . . . actions did not violate any of those clearly established rights.

The availability of this defense does not depend on whether the plaintiff's rights were in fact violated. Id. "[L]aw enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be personally liable." Id. at 423, citing, Anderson v. Creighton, 483 U.S. 635, 641 (1987).

A law enforcement officer seeking summary judgment on the ground of qualified immunity bears the burden of proving that it was "objectively reasonable" for him to believe that his behavior did not violate the plaintiff's clearly established constitutional rights. This is the test to be used in the instant case, namely, whether it was "objectively reasonable" for Officers Peckham and Carr to believe that they were not violating any of the plaintiff's constitutional rights to be free from unreasonable or excessive force. See Lennon v. Miller, 66 F.3d 422.

In the context of applying the defense of qualified immunity to allegations asserting a lack of probable cause, "the issue for immunity purposes is not probable cause in fact but ***arguable probable cause***." Myers v. Morris, 810 F.2d 1437, 1455 (8th Cir.), cert. denied, 484 U.S. 828 (1987) (citations omitted; internal quotation marks omitted; emphasis added). "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." Lee v. Sandberg, 136 F.3d 94 ¶36 (2d Cir. 1997) (citations omitted; internal quotation marks omitted).

## IV. LAW AND ARGUMENT

### A. BROWN'S CLAIMS AGAINST RAYMOND CURIOSO FAIL AS A MATTER OF LAW AS HE WAS NOT PRESENT OR INVOLVED IN BROWN'S ARREST

In order to state a claim pursuant to 42 U.S.C. §1983, the complaint must allege that a person, acting under color of state law, committed an act which deprived the plaintiff of a right, privilege or immunity secured by the laws or Constitution of the United States. See Dove v. Fordham University, 56 F. Supp. 2d 330, 335-36 (S.D.N.Y. 1999). Section 1983 imposes liability upon a defendant only where he/she personally "subjects or causes to be subjected the complainant to a deprivation of a right secured by the Constitution and laws." Williams v. Smith 781 F.2d 319, 323 (2d Cir. 1986); see also Dove v. Fordham Univ., 56 F. Supp. 2d 330, 336 (S.D.N.Y. 1999); Snider v. Dylag, 188 F.3d 51, 54 (2d Cir. 1999); Kia v. McIntyre, 2 F. Supp. 2d 281, 294 (E.D.N.Y. 1998). "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." Williams v. Smith, 781 F.2d at 323; see also Repress v. Coughlin, 585 F. Supp. 854, 859 (S.D.N.Y. 1984). Where a plaintiff is unable to adduce any evidence demonstrating the personal involvement of a defendant in the alleged deprivation of rights under §1983, the action must be dismissed as to that defendant. Kia v. McIntyre, 2 F. Supp. 2d at 294; Repress v. Coughlin, 585 F. Supp. at 859; Sprau v. Coughlin, 997 F. Supp. 390, 394 (W.D.N.Y. 1998).

Brown is unable to establish any involvement by Officer Raymond Curioso in this matter. Officer Curioso was not present, nor did he participate in Brown's arrest. (Affidavit of Raymond Curioso, attached as **Exhibit M**). In fact, Officer Curioso was not on duty at the time of Brown's arrest on June 29, 2001. (**Exhibit M**). Brown is, thus, unable to establish that there was any involvement on the part of Officer Curioso, or that

he was even present, with regard to the incidents alleged in his complaint. Accordingly, the defendant, Raymond Curioso, is entitled to judgment as a matter of law as to Brown's Amended Complaint in its entirety.

### B. Brown's Claims Of False Arrest And Warrantless Arrest Are Barred Under The Doctrine Of Qualified Immunity

In the First Count of his Amended Complaint, Brown alleges a cause of action pursuant to 42 U.S.C. §1983 for a violation of his right to freedom from unreasonable arrest, warrantless arrest and arrest without probable cause under the Fourth and Fourteenth Amendment to the U.S. Constitution. (Amended Complaint, Count One, ¶¶20, 23). The right to be free from false arrest is derived from the Fourth Amendment. See Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002) (holding that "§1983 claim for false arrest derives from an individual's right to remain free from unreasonable seizures."). However, a cause of action for false arrest does not arise under the Fourteenth Amendment to the U.S. Constitution. See Albright v. Oliver, 510 U.S. 266 (1994) (holding that false arrest claims under §1983 are to be evaluated under the Fourth Amendment and not under the Fourteenth Amendment substantive due process provision). Accordingly, the defendants treat Brown's false arrest and warrantless arrest claims as pursuant to the Fourth Amendment to the U.S. Constitution and 42 U.S.C. §1983.

Section 1983 provides a right of action against any person who, acting under color of law, deprives another of a right, privilege, or immunity secured by the Constitution or federal laws. See 42 U.S.C. §1983; Rendell-Baker v. Kohn, 457 U.S. 830, 835, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Section 1983 does not create any substantive rights, but rather provides a procedure to redress the deprivation of federal rights which are guaranteed elsewhere. See City of Oklahoma City v. Tuttle, 471 U.S.

808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Thomas v. Roach, 165 F.3d 137, 142 (2nd Cir. 1999). In order to succeed on a §1983 claim, the plaintiff must establish that the defendant had the requisite state of mind for the underlying violation. Board of County Comm'rs of Bryan County, Okla v. Brown, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

The federal doctrine of qualified immunity will protect police officers against §1983 suits unless their actions violate clearly established constitutional or statutory rights, and a reasonable officer would have known that the challenged conduct violated that established right. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Thomas v. Roach, 165 F.3d 137, 142 (2nd Cir. 1999). The test to be applied in the instant case is whether it was "objectively reasonable" for Officers Peckham and Carr to believe that they were not violating any of the plaintiffs' constitutional rights to be free from arrest absent probable cause or a warrant. See Lennon, 66 F.3d at 422.

An arresting officer is entitled to qualified immunity from a claim for unlawful arrest if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Lennon v. Miller, supra at 423, quoting Golino v. City of New Haven, 950 F.2d 864, 870 (1991), cert. denied, 505 U.S. 1221, 112 S.Ct. 3032 (1992). Additionally, an arrest without a warrant is deemed valid if it is supported by probable cause. See Wong Sun v. United States, 371 U.S. 471, 479 (1963).

"Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Id., citing

Dunaway v. New York, 442 U.S. 200, 208 n.9, 99 S.Ct. 2248, 2254 n.9 (1979) (internal quotes omitted). For qualified immunity purposes, the issue is not whether probable cause in fact exists but whether "arguable" probable cause exists. See Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997) citing, Myers v. Morris, 810 F.2d 1437, 1455 (8th Cir. 1987). Arguable probable cause exists when a reasonable police officer in the same circumstances, and possessing the same knowledge as the officer in question, could have reasonably believed that probable cause existed in the light of well established law. See id.

In the instant matter, Brown cannot prevail on his false arrest and warrantless arrest claim against the individual defendant officers, as he pled guilty to the charge of Breach of Peace during the criminal proceedings against him.

"A §1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest. See, e.g., Weyant v. Oakst, 101 F.3d 845, 852 (2d Cir. 1996) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."), cert. denied, 517 U.S. 1189 (1996)." Fulton v. Robinson, 289 F.3d 188, 194, (2nd Cir. 2002).

"It is clear that if the plaintiff has been convicted of either of the crimes with which he was charged, or of any lessor included offenses, this would be conclusive proof of probable cause which would defeat his claim of [false arrest or] false imprisonment. See, Pouncey v. Ryan, 396 F.Supp. 126, 127 (D.Conn. 1975)." Konon v. Fornal, 612 F.Supp. 68, 71 (D.Conn. 1985).

In Pouncey v. Ryan, supra, Judge Newman held that a conviction by guilty plea on a lessor included offense of the one charged, barred a subsequent section 1983 action for false arrest or false imprisonment:

> Section 1983 is to be interpreted against the background of common law tort liability, Pierson v. Ray, 386 U. S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and defenses available at common law remain available under the Civil Rights Act, cf., Bivens v. Six Unknown Named Agents, 456 F.2d 1339 (2d Cir. 1972). The present action, as plaintiff's concede, is similar to the common law actions of false arrest and false imprisonment, and in neither of these actions is a plaintiff permitted to challenge probable cause in the face of a valid judgment of conviction. , 456 F.2d 1339 (2d Cir. 1972). The present action, as plaintiff's concede, is similar to the common law actions of false arrest and false imprisonment, and in neither of these actions is a plaintiff permitted to challenge probable cause in the face of a valid judgment of conviction. E.g., McMahon v. Florio, 147 Conn. 704, 166 A.2d 204 (1960); Clewley v. Brown Thomson, Inc., 120 Conn. 440, 181 A. 531 (1935). See, 1 Harper & James, The Law of Torts §4.12.

Konon, 612 F.Supp. at 71; quoting, Pouncey, 396 F.Supp. at 127. Accordingly, Brown's claims of false arrest and warrantless arrest fail as a matter of law.

Notwithstanding the above, it was objectively reasonable for the officers to believe that they had probable cause to arrest Brown in this matter. Brown was charged with Breach of Peace pursuant to Conn. Gen. Stat. §53a-181, Criminal Trespass pursuant to Conn. Gen. Stat. §53a-109, Interfering with an Officer pursuant to Conn. Gen. Stat. §53a-167(a), Possession of Marijuana pursuant to Conn. Gen. Stat. §21a-279(c), Possession of Drug Paraphernalia pursuant to Conn. Gen. Stat. §21a-267, and Scuba Diving Without Proper Flags pursuant to Conn. Gen. Stat. §15-135(a). The undisputed facts relevant to the determination of the objective reasonableness of Officer Peckham and Officer Carr's belief that they were not violating any of the plaintiff's constitutional rights to be free from arrest absent probable cause or a warrant are as follows:

1. On June 29, 2001, Officer Michael Peckham was conducting uniformed patrol in the Stonington section of Stonington, Connecticut. (Police Report to the Prosecutor re Edward Brown dated June 30, 2001, attached as **Exhibit A**) (Police Report to the Prosecutor re Jeffrey Menard dated June 30, 2001, attached as **Exhibit B**) (Affidavit of Michael Peckham, attached as **Exhibit C**).

2. Officer Peckham was advised by Cheryl Henry that her husband, Phillip Henry, was located on the town dock and requested the police for a problem at the docks. (Police Report re Edward Brown, **Exhibit A**) (Police Report re Jeffrey Menard, **Exhibit B**) (Peckham Affidavit, **Exhibit C**).

3. Officers Michael Peckham and John Carr responded to the scene, and upon arrival, spoke with Phillip Henry and Cheryl Henry. (Police Report re Edward Brown, **Exhibit A**) (Police Report re Jeffrey Menard, **Exhibit B**) (Peckham Affidavit, **Exhibit C**) (Affidavit of John Carr, attached as **Exhibit D**).

4. Phillip and Cheryl Henry reported what had transpired, and further advised the officers that many fishermen have pots in the water in the area of the docks, and that many of the fishermen, including Henry, have had lobsters stolen in the recent past. (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**).

5. The subject dock had a clearly posted sign which read, "No Scuba Diving or Swimming at Town Dock." (Police Report re Jeffrey Menard, **Exhibit B**) (Peckham Affidavit, **Exhibit C**).

6. The portion of the subject area where the plaintiffs were located was leased to the Stonington Small Boat Association, Inc., and had a large posted sign which read in pertinent part, "1. This facility is leased from the Waterfront Commission of the Town of Stonington by the Stonington Small Boat Association, Inc. Use is limited to members and guests of the Association." (Peckham Affidavit, **Exhibit C**.)

7. Officer Peckham and Officer Carr observed the plaintiff, Edward Brown, in dive gear in the water. (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**) (Carr Affidavit, **Exhibit D**).

8. Brown was located near the retaining wall located adjacent to the dock. (Deposition of Edward Brown dated May 22, 2003, attached as **Exhibit G**, at p.36.)

9. Officer Peckham walked over to the retaining wall portion of the dock and was about ten (10) feet away from Brown. (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**).

10. Officer Peckham instructed Brown to exit the water and bring with him the large bag he was carrying. (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**).

11. Brown began to shout at Officer Peckham, stating, "Fuck you, you can't do shit to me." (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**).

12. Brown further stated, "Get the fucking light out of my eyes," in reference to a light shined on him. (Brown Deposition, **Exhibit G**, at p.35.)

13. Brown was aware that he was conversing with a police officer at the time that he was instructed to get out of the water. (Brown Deposition, **Exhibit G**, at pp.36-37.)

14. Brown proceeded to empty lobsters out of the bag he was carrying. (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**) (Brown Deposition, **Exhibit G**, at p.38).

15. Officer Peckham instructed Brown to stop emptying the bag and exit the water numerous times. Brown responded, "Fuck you, I have done nothing wrong." (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**).

16. Officer Peckham informed Brown that he was going to be arrested, however, Brown continued to empty the bag and did not exit the water as instructed. (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**).

17. Once Brown had completely emptied the bag of lobsters, he exited the water. (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**).

18. Brown did not exit the water right away although he had been instructed to do so. (Brown Deposition, **Exhibit G**, at pp.36, 40.)

19. Brown was walked away from the beach to his truck, upon which Brown opened the truck and presented his lobster license. (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**) (Brown Deposition, **Exhibit G**, at p.47).

20. Brown was placed under arrest and handcuffed. (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**).

21. Brown's vehicle was searched, incident to his arrest, at which time a metal smoking device with resin was located in the ashtray of the vehicle, along with a bag of greenish-brown plant-like material. A dive flag was also located in the front seat of the vehicle. (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**).

22. Officer Peckham subjected a small portion of the greenish-brown plant-like material from the bag to a Duquenois-Levine field test and observed a positive reaction indicative of the presumptive presence of marijuana. (Police Report re Edward Brown, **Exhibit A**) (Peckham Affidavit, **Exhibit C**).

The undisputed facts demonstrate that it was objectively reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest Brown for Breach of Peace. Connecticut General Statutes §53a-181 defines Breach of the Peace, in relevant part, as:

> A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; . . . or (5) in a public place, uses abusive or obscene language or makes an obscene gesture . . .

Conn. Gen. Stat. §53a-181.

As a matter of law, Officers Peckham and Carr could have reasonably believed that, based on their own observations at the scene, they had probable cause to arrest the plaintiff on the charge of Breach of Peace. Officers Peckham and Carr personally observed Brown's belligerent conduct, and use of abusive and obscene language, when instructed to exit the water. Under these circumstances, it was reasonable for Officers Peckham and Carr to believe that they had probable cause to arrest Brown for the crime of Breach of Peace. As a result, Officers Peckham and Carr are protected under qualified immunity as to plaintiff's claim of false arrest and warrantless arrest for Breach of Peace.

The undisputed facts also demonstrate, as a matter of law, that it was objectively reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest Brown for Interfering with an Officer. The Connecticut General Statutes define Interfering with an Officer as follows: "A person is guilty of interfering with a police officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties." Conn. Gen. Stat. §53a-167a. The plaintiff concededly refused to follow the orders of the officers to exit the water with the bag he was carrying. In fact, the plaintiff concedes that he emptied the bag despite being ordered not to do so by the officers, and did not exit the water right away. Under these circumstances, it was reasonable for Officers Peckham and Carr to believe that they had probable cause to arrest Brown for the crime of Interfering With an Officer. As a result, Officers Peckham and Carr are protected under qualified immunity as to plaintiff's claim of false arrest and warrantless arrest for Interfering with an Officer.

Likewise, the undisputed facts demonstrate that it was objectively reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest Brown for Criminal Trespass. Connecticut General Statutes §53a-109 defines Criminal Trespass as follows:

> A person is guilty of criminal trespass . . . when, knowing that he is not licensed or privileged to do so: (1) He enters or remains in premises which are posted in a manner prescribed by law or reasonably likely to come to the attention of intruders, or fenced or otherwise enclosed in a manner designed to exclude intruders . . . or (2) he enters or remains in any premises for the purpose of hunting, trapping or fishing.

Conn. Gen. Stat. §53a-109.

As a matter of law, it was objectively reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest Brown for Criminal Trespass based upon their observations of Brown in the water in diving gear. As indicated above, the

subject dock had a clearly posted sign which explicitly prohibited scuba diving or swimming. Additionally, the portion of the subject area where the plaintiffs were located was leased to the Stonington Small Boat Association, Inc., and had a large posted sign which designated "for use by members only." Under these circumstances, it was reasonable for Officers Peckham and Carr to believe that they had probable cause to arrest Brown for the crime of Criminal Trespass. As a result, Officers Peckham and Carr are protected under qualified immunity as to plaintiff's claim of false arrest and warrantless arrest for Criminal Trespass.

Finally, the undisputed facts demonstrate that it was objectively reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest Brown with regard to the remaining charges, namely Possession of Marijuana pursuant to Conn. Gen. Stat. §21a-279(c), Possession of Drug Paraphernalia pursuant to Conn. Gen. Stat. §21a-267, and Scuba Diving Without Proper Flags pursuant to Conn. Gen. Stat. §15-135(a). As indicated above, a search of Brown's vehicle, incident to his arrest, revealed a metal smoking device with resin, a bag of greenish-brown plant-like material, and a dive flag. The plant-like substance tested positive for marijuana. Under these circumstances, it was reasonable for Officers Peckham and Carr to believe that they had probable cause to arrest Brown for the crimes of Possession of Marijuana, Possession of Drug Paraphernalia, and Scuba Diving Without Proper Flags. As a result, Officers Peckham and Carr are protected under qualified immunity as to plaintiff's claim of false arrest and warrantless arrest for Possession of Marijuana, Possession of Drug Paraphernalia, and Scuba Diving Without Proper Flags.

The defendants are, therefore, entitled to judgment as a matter of law with regard to Brown's claims of false arrest and warrantless arrest.

### C. BROWN'S CLAIMS OF FALSE ARREST AND WARRANTLESS ARREST ARE BARRED UNDER THE DOCTRINE OF GOVERNMENTAL IMMUNITY

Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. Elliot v. City of Waterbury, 245 Conn. 385, 411 (1998). Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. See Heigl v. Bd. of Ed., 218 Conn. 1, 5 (1991). In contrast, "[m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." Mulligan v. Rioux, 229 Conn. 716, 727 (1994) (Citations omitted; internal quotations omitted). Municipal employees are entitled to governmental immunity for acts which require the sound exercise of discretion. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180-181 (1988). "The hallmark of a discretionary act is that it requires the exercise of judgment." Lombardi v. Edward J. Peters., P.C., 252 Conn. 623, 628 (2000).

The determination of whether an act is discretionary or ministerial can be decided as a matter of law where it is apparent from the allegations in the complaint. See Evon v. Andrews, 211 Conn. 501, 505-507 (1989); Lombardi v. Edward J. Peters., P.C., supra, 252 Conn. 628.

Policing the community and investigating those who break the law is a governmental function which requires the exercise of discretion. Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 180-181. Similarly, several Connecticut Superior Court cases have held that the process by which a police officer decides to make an arrest or conduct an investigation involves discretionary actions. See, Lipka v. Madoule, 2001 Ct. Sup. 17101 (Conn. Super. Ct. Dec. 17, 2001) (Copy attached as **Exhibit N**); Mikita v. Barre, 2001 Ct. Sup. 6074 (Conn. Super. Ct. May 21, 2001) (Copy

attached as **Exhibit O**); Anderson v. City of New London, 1999 Ct. Sup. 2841 (Conn. Super. Ct. March 4, 1999) (Copy attached as **Exhibit P**); Castorina v. Stewart, 1998 Ct. Sup. 9118 (Conn. Super. Ct. June 3, 1998) (Copy attached as **Exhibit Q**); Elinsky v. Marlene, 1997 Ct. Sup. 11144 (Conn. Super. Ct. October 31, 1997) (Copy attached as **Exhibit R**).

At all times mentioned in the Amended Complaint, the defendants were acting within the scope of their employment and performing their duties as members of the Stonington Police Department. (Amended Complaint, Count One, ¶5.) In this case, Brown's claims arise directly from the alleged actions and inactions of members of the Stonington Police Department. The investigation of Phillip Henry's complaint of a problem at the town dock, and subsequent arrest of the plaintiffs, is the very type of discretionary governmental activity to which the doctrine of governmental immunity applies. See e.g., Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 180-181.

As the Connecticut Supreme Court has noted, "we do not think that the public interest is served by allowing a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty. Such discretion is no discretion at all." Shore v. Stonington, 197 Conn. 147, 157 (1982). The actions of the defendants are, therefore, protected pursuant to the doctrine of governmental immunity. Accordingly, summary judgment should enter on behalf of the defendants.

### D. BROWN'S CLAIMS OF EXCESSIVE FORCE PURSUANT TO THE FOURTEENTH AMENDMENT AND §1983 FAIL AS A MATTER OF LAW AS THAT AMENDMENT DOES NOT PROVIDE THE PROPER VEHICLE FOR EXCESSIVE FORCE CLAIMS IN THIS CASE

In Count One of the complaint, Brown alleges that the defendants deprived him "of [his] rights to . . . freedom from the use of unreasonable force by a police officer . . .

[which are] secured to [him] by the provisions of the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution and by Title 42 U.S.C. §1983 and §1988 . . . ." (Amended Complaint, Count 1, ¶23). To the extent that Count One alleges a claim for excessive force based on the Fourteenth Amendment, that claim fails as a matter of law as that Amendment does not provide the plaintiff with the proper means for redress of an excessive force claim in this case.

The Supreme Court has held that:

> all claims that law enforcement officers have used excessive force. . . deadly or not . . . in the course of an arrest, investigatory stop, or other "seizure" . . . should be analyzed under the Fourth Amendment and its 'reasonableness standard,' rather than under a substantive due process approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing these claims.

Graham v. Connor, 490 U.S. 386, 395 (1989). Because "excessive force used by officers arresting suspects implicates the Fourth Amendment's prohibition on unreasonable seizures, rather than the Fourteenth Amendment's guarantee of substantive due process," summary judgment is appropriate as to any excessive force claim brought under the Fourteenth Amendment. See Thomas v. Roach, 165 F.3d 137, 144-45 (2d Cir. 1999).

Therefore, to the extent that Count One seeks to impose liability upon the defendant officers on the claim of excessive force under the Fourteenth Amendment, that claim must fail as a matter of law. Accordingly, summary judgment should enter on behalf on the defendant officers on the claim for excessive force as alleged in Count One.