For the purposes of this inquiry, the undisputed facts relevant to the determination of objective reasonableness show that Officer Peckham's and Officer Carr's actions were objectively reasonable:

1.    After speaking with Phillip Henry, Officer Peckham approached Menard. Menard and his clothing were wet. Menard stated that he had been in the water. (Police Report re Jeffrey Menard, **Exhibit B**) (Peckham Affidavit, **Exhibit C**) (Menard Deposition, **Exhibit F**, at p.32).

2.    The subject dock had a clearly posted sign which read, "No Scuba Diving or Swimming at Town Dock." (Police Report re Jeffrey Menard, **Exhibit B**) (Peckham Affidavit, **Exhibit C**).

3.    Menard conceded that he had seen the sign which read no swimming or diving. (Police Report re Jeffrey Menard, **Exhibit B**) (Peckham Affidavit, **Exhibit C**).

4.    Menard was instructed to turn around and place his hands on his head. Upon complying, Menard was handcuffed and placed in a police cruiser. (Menard Deposition, **Exhibit F**, at p.45.)

5.    Menard was transported to the police station. (Peckham Affidavit, **Exhibit C**.)

In the instant matter, it was reasonable for Officer Peckham to believe that probable cause existed for him to arrest Menard on a Breach of Peace and Criminal Trespass charge given the plaintiff's actions observed by Officer Peckham.

Additionally, Officer Peckham was also justified by state statute in his use of force against the plaintiff. Once probable cause existed to arrest the plaintiff for Breach of Peace and Criminal Trespass, Officer Peckham was authorized to use reasonable force to effectuate the arrest pursuant to C.G.S. §53a-22.[1]

---

[1]C.G.S. §53a-22(b) provides, ... "[A] peace officer ... is justified in using physical force upon another person when and to the extent that he reasonably believes such to be necessary to: (1) Effect the arrest or prevent the escape from custody of a person whom he reasonably believes to have committed an offense, unless he knows that the arrest or custody is unauthorized ..."

21

The plaintiff's own testimony indicates that Officer Peckham did not use excessive force in effectuating his arrest.  The plaintiff can only point to the fact that he believed the handcuffs were tight.  (Responses to Interrogatories and Requests for Production dated July 10, 2002, attached as **Exhibit O**, at Interrogatory Number 11).  At his deposition, Menard testified that the officer instructed him to turn around and place his hands on his head.  (Menard Deposition, **Exhibit F**, at p.45).  Menard complied, at which time the officer approached him and "grabbed [him] by the arm real hard, flipped it down real fast, then he took the other arm and did the same thing.  He handcuffed me, and walked me over and put me in the cruiser." (Id.).  Such a claim cannot, as a matter of law, rise to the level of excessive force.  The defendants are, therefore, entitled to judgment as a matter of law with regard to Menard's claims of excessive force.

G.    MENARD'S CLAIM OF UNREASONABLE SEARCH AND SEIZURE FAILS AS A MATTER OF LAW

Menard further alleges that the defendants deprived him of his right to be free from unreasonable search and seizure.  (Amended Complaint, Count One, ¶23).  As indicated above, the defendant officers had probable cause to arrest Menard for Breach of Peace and Criminal Trespass.  Accordingly, there was no unreasonable seizure of the plaintiff at the time of his arrest.  Additionally, once Menard had been arrested, the defendant officers were justified in their search of his person.  Where there is a lawful custodial arrest, the officers may conduct a full, contemporaneous search of the person without first obtaining a warrant.  See New York v. Belton, 453 U.S. 454, 458 (1981); Chimel v. California, 395 U.S. 752 (1969); United States v. Robinson, 414 U.S. 218 (1973).

The plaintiff's claim of unreasonable search apparently stems from the fact that he was frisked after being placed under arrest. Menard testified at his deposition that the officer handcuffed him, and then proceeded to frisk him, and removing his wallet from his pocket. (Mendard Deposition, **Exhibit F**, at pg. 56). As indicated above, officers may lawfully search a defendant's person after he has been placed under arrest. Accordingly, the officers' frisk of Menard, and subsequent removal of his wallet, at the time of his arrest was lawful. The defendants are, therefore, entitled to judgment as a matter of law as to the plaintiff's unreasonable search and seizure claim.

### H. MENARD'S CLAIMS REGARDING A VIOLATION OF HIS FIRST AMENDMENT RIGHTS FAILS AS A MATTER OF LAW

In his Amended Complaint, the plaintiff alleges that the conduct of the defendants chilled him in the "exercise of [his] right to petition for the redress of grievances under the First and Fourteenth Amendments to the United States Constitution," and deprived him of his rights to freedom of speech. (Amended Complaint, Count One, ¶¶ 20, 23). the plaintiff's claims for a violation of his First Amendment rights fails as a matter of law as the plaintiff lacked a clearly established constitutional right pursuant to the First Amendment at the time of his encounter with Officers Peckham and Carr.

In order to sustain a cause of action pursuant to 42 U.S.C. §1983, the plaintiff must present facts which indicate a deprivation of constitutional rights. See Colombo v. O'Connell, U.S. District Court, District of Connecticut, Docket No. 3:00-CV-1559 (JCH) (Dec. 27, 2001), citing, Spear v. West Hartford, 952 F.2d 63, 67 (2d Cir. 1992). The defense of qualified immunity shields government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." <u>McEvoy v. Spencer</u>, 124 F.3d 92, 97 (2d Cir. 1997), <u>quoting</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 818.

A right is "clearly established" when "[t]he contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . [T]he unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 640. <u>See</u> <u>e.g.</u>, <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly break the law."); <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 528 (1985) (officials are immune unless "the law clearly proscribed the actions they took.").

In determining whether a particular right was clearly established for purposes of assessing the applicability of qualified immunity , the Second Circuit has considered three factors:

> (1) whether the right in question was defined with "reasonable specificity";
> (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant or official would have understood that his or her acts were unlawful.

<u>Jermosen v. Smith</u>, 945 F.2d 547, 550 (2d Cir. 1991).

Even if the right in question was clearly established, the defendant will be entitled to qualified immunity if it was objectively reasonable for him to believe that his actions did no violate a clearly established right.  Specifically,

> the individual defendants enjoy qualified immunity . . . if at the time of the pertinent episode it was not clear that the actions they took violated established constitutional rights, or of it was objectively reasonable for them to believe that their actions did not violate such rights as were then clearly established.

<u>Van Emrik v. Chemung County Dept. of Soc. Servs.</u>, 911 F.2d 863, 865-66 (2d Cir. 1990).

In the instant matter, Menard does not specify how his right to freedom of speech and freedom to petition for redress of grievances was violated. Menard does not allege that the conduct of the defendants infringed or chilled his speech, nor does he allege that he was prevented in petitioning for a redress of his grievances. Rather, Menard simply alleges that he was lawfully in a public place. (Amended Complaint, Count One, ¶ 9). Such an allegation is insufficient to rise to the level of a constitutional deprivation of Menard's First Amendment rights.

The U.S. Supreme Court has held that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." <u>U.S. Postal Service v. Greenburgh Civic Assns.</u>, 453 U.S. 114, 129 (1981). Additionally, the Court has held that "the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." <u>Id.</u>, at 129-30.

Menard did not have a clearly established, guaranteed right to be at the Stonington Town Dock and engage in activity which was in violation of the law. As indicated above, Menard was not at the subject premises for a lawful purpose as he admittedly entered the water contrary to the clearly posted signs prohibiting the same, thereby constituting a criminal trespass. Moreover, he engaged in belligerent behavior in a public place thereby constituting a breach of peace. The facts in the present matter do not rise to the level of a deprivation of Menard's First Amendment rights. There is no

evidence to suggest that the conduct of the defendants had any actual chilling effect on Menard's right to freedom of speech.

Likewise, there is no evidence that the conduct of the defendants prevented Menard from speaking out about this incident as he has pursued his right to file the subject federal lawsuit as to the same.

As the conduct of the defendants did not deprive the plaintiff of his First Amendment rights, he cannot maintain an action under §1983 for violation of the same. Even if the Court finds that the plaintiff had a clearly established right under the First Amendment, the defendants are entitled to qualified immunity as it was objectively reasonable for them to believe that probable cause existed for Menard's arrest at the Stonington Town Docks on the charges levied against him. The defendants are, therefore, entitled to judgment as a matter of law as to the plaintiff's First Amendment claim.

I.    **MENARD FAILS TO STATE A CLAIM AGAINST THE TOWN OF STONINGTON**

In order to state a claim pursuant to 42 U.S.C. §1983, the complaint must allege that a person, acting under color of state law, committed an act which deprived the plaintiff of a right, privilege or immunity secured by the laws or Constitution of the United States. See Dove v. Fordham University, 56 F.Supp. 2d 330, 335-36 (S.D.N.Y. 1999). Where a plaintiff seeks to hold a municipality liable as a "person" within the meaning of §1983, the plaintiff must establish that the municipality was in some way at fault for the injuries sustained. Id. at 336.

The United States Supreme Court has held that a municipality may be held liable only where the deprivation of a Constitutional right was the result of a municipal policy

26

or custom.  See Monell v. Dept. of Social Services, 436 U.S. 658, 690-91, 98 S.Ct.

2427, 56 L.Ed.2d 611 (1978); Oklahoma v. Tuttle, 471 U.S. 808, 810, 105 S.Ct. 2018,

56 L.Ed.2d 791 (1985).  Thus, in order to state a claim against a municipality pursuant

to §1983, a plaintiff must:  (1) prove the existence of a municipal policy or custom, the

exercise of which caused a deprivation of the plaintiff's rights; and (2) establish an

affirmative link between the policy and the alleged constitutional violation.  See

Oklahoma v. Tuttle, 471 U.S. at 817, 823.

In the present case, Menard has failed to state a claim against the Town of

Stonington pursuant to §1983.  The Amended Complaint does not allege that any

municipal custom or policy resulted in the deprivation of Menard's constitutional rights.

In fact, Menard simply alleges that the Town of Stonington is liable for the actions of the

defendants.  Such an allegation falls well short of the standard for liability required by

the U.S. Supreme Court in Monell, namely that the deprivation of a constitutional right

was the result of a municipal custom or policy.

Additionally, if the Court finds that the defendant officers did not violate Menard's

constitutional rights as alleged, Menard cannot then be deemed to have suffered any

constitutional injury.  In the absence of a constitutional injury, Menard's Monell claims

against the Town of Stonington, and its officials, are subject to dismissal as a matter of

law.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam).

In the alternative,

[a]bsent evidence of a municipal policy (i.e., evidence of the policy itself or
of the involvement of statutorily authorized policy-making officials), a
plaintiff seeking to establish municipal liability under §1983 can only meet
his burden by establishing that responsible supervisory officials
acquiesced in a pattern of unconstitutional conduct by subordinates.  Only

27

after such a pattern of acquiescence is shown, may a municipality be deemed to have sanctioned the unconstitutional conduct.

<u>Dove</u>, 56 F.Supp. 2d at 336, <u>citing</u> <u>Turpin v. Mailet</u>, 619 F.2d 196, 201 (2d Cir. 1980).

In the instant matter, Menard alleges that Chief David Erskine and Captain Jerry Desmond "were aware of prior instances in which Stonington police officers violated the civil rights of other persons and other constitutional misconduct," and that Chief Erskine and Captain Desmond had "the duty to adopt necessary policies to properly train and supervise the police officers under [their] command to prevent constitutional violations." (Amended Complaint, Count One, ¶¶6, 7).

In <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), the U.S. Supreme Court held that, "there are limited circumstances in which an allegation of a "failure to train" can be the basis for liability under §1983. <u>Id</u>. at 387.  Noting the substantial disagreement among the Circuits, the Court held that "the inadequacy of training policy may serve as the basis for §1983 liability only where the failure to train amounts to ***deliberate indifference*** to the rights of persons with whom the police come in contact." <u>Id</u>. at 388 (emphasis added).  The Court further observed that:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

<u>Id</u>. at 390 (footnotes omitted).

In order to prove such deliberate indifference, the plaintiff "must show that the need for more or better supervision to protect against constitutional violations was

obvious." <u>Vann v. City of New York</u>, 72 F.3d 1040, 1049 (2d Cir. 1995). "An obvious

need may be demonstrated through proof of repeated complaints of civil rights

violations; deliberate indifference may be inferred if the complaints are followed by no

meaningful attempt on the part of the municipality to investigate or to forestall further

incidents." <u>Id</u>.

   In the instant matter, Menard cannot prove that the defendant Town adopted a

policy of inadequate training of its police officers so as to evidence a deliberate

indifference to residents or visitors to the Town of Stonington.  The Town requires all

officers to adhere to the training protocol established by state standards.  All of the

defendant officers completed training at the Connecticut Municipal Police Training

Academy. (Erskine Affidavit, **Exhibit G**) (Desmond Affidavit, **Exhibit H**).  While at the

academy, the defendant officers and Sergeant received training in, *inter alia*: criminal

investigation, human relations, defensive tactics, and use of force. (Erskine Affidavit,

**Exhibit G**) (Desmond Affidavit, **Exhibit H**).  From the year ending 1998, the defendant

officers were required to complete forty hours of training in job-related subjects within a

three-year period to re-certify. (Erskine Affidavit, **Exhibit G**) (Desmond Affidavit,

**Exhibit H**).  At the time of the June 29, 2001 incident, the aforesaid officers had

attended supplemental training courses as part of their re-certification requirements

(including laws of arrest, stopping suspects, use of force), and were in full compliance

with the re-certification requirements in place at that time. (Erskine Affidavit, **Exhibit G**)

(Desmond Affidavit, **Exhibit H**).

   There exists no genuine issue of material fact that Menard is unable to establish

any evidence of deliberate indifference on the part of the Town of Stonington, Chief

Erskine or Captain Desmond. Accordingly, the defendants are entitled to judgment as a matter of law as to Menard's <u>Monell</u> and failure to train claims.

> **J.    MENARD'S STATE-LAW CLAIM FOR ASSAULT AND BATTERY FAILS AS A MATTER OF LAW SINCE THE AMOUNT OF FORCE USED WAS REASONABLE UNDER THE CIRCUMSTANCES PRESENTED AND JUSTIFIED UNDER CONNECTICUT LAW**

The First Count of the Amended Complaint also alleges a claim for assault and battery. (Amended Complaint, Count One, ¶24). However, once probable cause existed to arrest Menard for Breach of Peace and Criminal Trespass, both Officers Peckham and Carr were authorized to use reasonable force to effectuate the arrest pursuant to C.G.S. §53a-22. In the instant matter, however, the plaintiff is unable to establish any assault and battery by the defendant officers as the force used by them was reasonable.

The plaintiff's own testimony indicates that Officer Peckham did not use excessive force in effectuating his arrest. The plaintiff can only point to the fact that he believed the handcuffs were tight. (Responses to Interrogatories and Requests for Production dated July 10, 2002, attached as **Exhibit O**, at Interrogatory Number 11). At his deposition, Menard testified that the officer instructed him to turn around and place his hands on his head. (Menard Deposition, **Exhibit F**, at p.45). Menard complied, at which time the officer approached him and "grabbed [him] by the arm real hard, flipped it down real fast, then he took the other arm and did the same thing. He handcuffed me, and walked me over and put me in the cruiser." (<u>Id</u>.). This type of force, as a matter of law, is reasonable and is justified pursuant to §53a-22(b). Accordingly, the defendants are entitled to judgment as a matter of law as to Menard's claim of assault and battery.

**K.     MENARD'S CLAIM OF FALSE IMPRISONMENT FAILS AS A MATTER OF LAW AS HE CANNOT ESTABLISH THE NECESSARY ELEMENTS OF SUCH A CLAIM**

Count One of the Amended Complaint alleges false imprisonment against the defendants. In support of this claim, the plaintiff alleges that he was "incarcerated for a period of approximately four hours." (Amended Complaint, Count One, ¶20). The plaintiff further alleges that he was caused "to be held in police custody although the defendants knew that the plaintiffs were local area residents, property owners and that the plaintiffs had relatives in the immediate area." Id. at ¶18. These bare allegations, viewed in a light most-favorable to the plaintiff, are not sufficient to form a viable claim for false imprisonment.

"False imprisonment . . . is the unlawful restraint by one person of the physical liberty of another." Green v. Donroe, 186 Conn. 265, 267 (1982). False imprisonment is an intentional tort. See Rivera v. Double A Transportation Inc., 248 Conn. 21, 31 (1999). "A person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." Id., quoting, 32 Am. Jur. 2d, False Imprisonment §9. "In the case of false imprisonment the detention must be wholly unlawful . . . " McGann v. Allen, 105 Conn. 177, 188 (1926) (emphasis added).

"To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." Lo Sacco v. Young, 20 Conn. App. 6, 19 (1989). If a person consents to, or acquiesces in, a

restraint imposed upon him, then that person has no viable claim for false imprisonment. Id.

In the instant matter, the plaintiff's claim for false imprisonment fails as a matter of law as the plaintiff was properly detained during a lawful police investigation for which probable cause existed for his detainment and subsequent arrest. Officers Peckham and Carr reasonably believed that they had probable cause to arrest Menard for Criminal Trespass and Breach of Peace given his appearance and conduct as witnessed by Officer Peckham and Mr. Henry.

As noted above, in the context of a false imprisonment claim, the detention must be "wholly unlawful." McGann v. Allen, 105 Conn. 188. "Because the law is clear that a cause of action for false imprisonment cannot be sustained where the plaintiff's [detention] results from the defendants' institution of and compliance with proper legal authority, the allegations of the plaintiff's complaint are insufficient to set up a cause of action for false imprisonment." Lo Sacco v. Young, 20 Conn. App. at 21.

To the extent that Count One alleges a claim for false imprisonment under §1983, that claim fails as a matter of law as well. "In order to make out a §1983 claim for false arrest or imprisonment, plaintiff must demonstrate that defendant intended to confine him, he was conscious of the confinement, he did not consent to the confinement, and the confinement was not otherwise privileged." Shain v. Ellison, 273 F.3d 57, 67 (2d Cir. 2001). An arrest made on probable cause is privileged, and probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief

that an offense has been committed by the person to be arrested." Id. at 68 (citations omitted; internal quotation marks omitted).

As indicated above, it was reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest the plaintiffs for Criminal Trespass and Breach of Peace based upon their own personal observations of the plaintiff, the plaintiff's conduct, and the observations reported by witness, Phillip Henry.

The defendants are, therefore, entitled to judgment as a matter of law as the plaintiff is unable to prove the elements essential to a cause of action based on false imprisonment.

### L. MENARD'S CLAIM OF ABUSE OF PROCESS IN COUNT FOUR FAILS AS A MATTER OF LAW AS HE IS UNABLE TO SATISFY THE ELEMENTS OF THAT CLAIM

Count One of the Amended Complaint also alleges a claim based on an abuse of process. Specifically, Menard alleges that the police defendants maliciously and willfully "prepared a false report which they knew and intended would be forwarded to a prosecuting attorney and relied upon by the prosecuting attorney in deciding whether to prosecute the plaintiffs and, if so, the manner in which the plaintiffs' prosecution should be handled." (Amended Complaint, Count 1, ¶19).

"[A] malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Cook v. Sheldon, 41 F.3d 73,80 (2d Cir. 1994).

"An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a

purpose for which it was not designed. Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process ... against another primarily to accomplish a purpose for which it is not designed. Comment (b) to 682 explains that the addition of "primarily" is meant to exclude liability when the process is used for the purpose for which it was intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."

Mozzochi v. Beck, 204 Conn. 490, 494 (1987).

In the present case, Menard is unable to satisfy the intent element of an abuse of process claim. A successful abuse of process claim requires that the plaintiff prove that the defendants intended to do harm to the plaintiff without excuse or justification. See Cook v. Sheldon, 41 F.3d 80. Here, the plaintiff cannot produce any evidence to support his allegations that the defendant officers acted "maliciously and willfully."

As indicated above, Officers Peckham and Carr reasonably believed that they had probable cause to arrest Menard based upon witness Henry's statement, and their personal observations at the scene. Menard is unable to proffer any evidence which supports his contention that he was subjected to an abuse of process as a result of his arrest, the charges against him or that the defendants prepared a false police report. Rather, Menard was charged with those offenses which were observed to have been committed in the presence of the officers, and as relayed based upon the speedy and reasonably trustworthy statements of the witness at the scene.

Therefore, no issue of material fact exists to dispute that Menard was not subjected to an abuse of process in relation to the charges lawfully levied against him and his arrest on those charges. The plaintiff cannot offer any evidence to support his allegations that he was subjected to an abuse of process or that the defendants

34

prepared false police reports. Accordingly, the defendants are entitled to judgment as a matter of law as to the plaintiff's abuse of process claim.

**M.    MENARD'S CLAIM OF MALICIOUS PROSECUTION FAILS AS A MATTER OF LAW AS HE IS UNABLE TO SATISFY THE ELEMENTS OF THAT CLAIM**

In Count One of the Amended Complaint, Menard attempts to set forth a claim for malicious prosecution. No issue of material fact exists to dispute that plaintiff has not properly pled a malicious prosecution claim, nor is he able to satisfy the required elements of such a claim.

"In order to prevail on a §1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." Fulton v. Robinson, 286 F.3d 188, 195 (2d Cir. 2002) (citations omitted). In Connecticut, an "action of malicious prosecution lies where a civil or criminal action has been instituted with malice and without probable cause, and has terminated unsuccessfully. The plaintiff must allege and prove that the original action … was instituted without probable cause, with malice, and that it terminated in his favor." QSP Inc. v. The Aetna Casualty & Surety Co., 256 Conn. 343, n.16 (2001) (emphasis added.), quoting, Schaefer v. O.K. Tool Co., Inc., 110 Conn. 528, 532 (1930).

A review of the Amended Complaint in this case reveals that the plaintiff has failed to allege that the criminal offenses he was charged with resulted in a favorable disposition to him, i.e., that the charges "terminated in his favor." Menard does allege a lack of probable cause and malice, as required for a malicious prosecution claim, however, it cannot be disputed that he has failed to allege that the criminal charges terminated in his favor. (Amended Complaint, Count 1, ¶19). Therefore, the plaintiff's

claim for malicious prosecution must fail as a matter of law as he has failed to allege all of the required elements for such a cause of action.

Additionally, the plaintiff's claim of malicious prosecution fails as a matter of law as probable cause existed for his arrest.  In Connecticut, a police officer can make a lawful warrantless arrest for a misdemeanor "only if the arresting police officer had probable cause to believe that the person was committing or had committed a criminal offense in the officer's presence."  Warren v. Dwyer, 906 F.2d 70, ¶14, (2d Cir. 1990), quoting State v. Elliot, 153 Conn. 147, 152-53 (1965).

As is more particularly set forth above, it was objectively reasonable for the defendant officers to believe that probable cause existed for the plaintiff's arrest based upon witness Henry's statement and their personal observations at the scene.  If the Court determines that arguable probable cause existed for the arrest of the plaintiff in this matter, then the plaintiff's claim for malicious prosecution must fail as a matter of law.

**N.    MENARD HAS FAILED TO ESTABLISH THE NECESSARY ELEMENTS OF A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN COUNTS ONE AND TWO**

The plaintiff alleges intentional infliction of emotional distress against the defendant officers in the First and Second Counts.  (Amended Complaint, Count One, ¶24; Count Two, ¶¶25-27).  The plaintiff has failed to offer any specific factual allegations to support a claim that either Officer Peckham or Officer Carr acted intentionally to inflict emotional distress, and absent any such showing, this claim must also fail.

In order to prevail on a cause of action for intentional infliction of emotional distress, the plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253 (1986). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Whelan v. Whelan, 41 Conn. Supp. 519, 523 (1991), quoting, 1 Restatement (Second) of Torts §46, p. 73, comment (d).

The conduct must be "especially calculated to cause, and does cause, mental distress of a very serious kind." DeLaurentis v. New Haven, 220 Conn. 225, 266 (1991); W. Prosser and W. Keeton, Torts, §12, p. 64 (5th Ed. 1984). Whether the defendants' actions rise to the level of extreme and outrageous conduct is a question of law for the Court, and only where reasonable minds can differ does it become a matter for the jury. See Mellaly v. Eastman Kodak Company, 42 Conn. Supp. 17, 18 (1991).

To be considered "extreme and outrageous," the conduct in question must be atrocious, utterly intolerable, and go beyond all possible bounds of human decency. See Whelan v. Whelan, 41 Conn. Supp. 523. For example, extreme and outrageous conduct was found to exist in the following cases: Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 20-21 (taunting and harassing plaintiff about his alcoholism despite knowledge that he was a recovering alcoholic); Whelan v. Whelan, 41 Conn. Supp. 519

37

(false statement to one's spouse that one has AIDS); <u>Talit v. Peterson</u>, 44 Conn. Supp. 490 (1997) (termination of employment in retaliation for filing grievance).

In the instant matter, the conduct of Officers Peckham and Carr clearly do not rise to the level of conduct which any reasonable person could find "extreme and outrageous." As indicated above, it was objectively reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest Menard on the charges of Breach of Peace and Criminal Trespass. The subject dock had a clearly posted sign which explicitly prohibited scuba diving or swimming. (<u>See</u> Peckham Affidavit, **Exhibit C**; Carr Affidavit, **Exhibit D**). Officer Peckham observed that Menard and his clothing were wet. (<u>See</u> Peckham Affidavit, **Exhibit C**). Menard conceded that he had been in the water, and that he had seen the no swimming or diving sign. (<u>See</u> Menard Deposition, **Exhibit F**, at p.32; Peckham affidavit, **Exhibit C**). Finally, the defendant officers had the timely and reasonably trustworthy statement of Phillip Henry regarding Menard's belligerent conduct at the scene. (<u>See</u> Henry Statement, **Exhibit E**).

Based upon their observations and Henry's statements, Officers Peckham and Carr had probable cause to arrest Menard for Breach of Peace and Criminal Trespass. Moreover, the officers utilized reasonable force in effectuating Menard's arrest. The plaintiff can only point to the fact that he believed the handcuffs were tight. (Menard's Discovery Responses, **Exhibit O**, at Interrogatory Number 11; Menard Deposition, **Exhibit F**, at p.45). The plaintiff is, therefore, unable to sustain his burden of proof that the defendant officers' conduct was extreme and outrageous, or that they acted with the intent to cause him emotional distress. Accordingly, the defendants are entitled to

judgment as a matter of law as to Counts One and Two of the Amended Complaint alleging the intentional infliction of emotional distress.

### O. MENARD'S CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS DIRECTED TO THE TOWN OF STONINGTON ARE BARRED BY THE DOCTRINE OF GOVERNMENTAL IMMUNITY

In the First and Second Counts of his Amended Complaint, Menard alleges claims of intentional infliction of emotional distress directed to the Town of Stonington. Said claims are expressly barred by the doctrine of governmental immunity.

Connecticut General Statutes, §52-557n expressly immunizes political subdivisions of the state from liability for damages caused by the intentional acts of its employees. Section 52-557n(a)(2) provides that:

> [A] political subdivision of the State shall not be liable for damages to person or property caused by: (A) acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or willful misconduct.

Pursuant to §52-557n, the Town of Stonington is entitled to summary judgment with regard to the plaintiff's claims of intentional infliction of emotional distress as alleged in Counts One and Two of the Amended Complaint.

### P. MENARD'S CLAIMS UNDER THE CONNECTICUT CONSTITUTION FAIL AS A MATTER OF LAW

In the First Count of the Amended Complaint, the plaintiff brings a claim against the Town of Stonington and the individually named defendants pursuant to article first of the Connecticut Constitution. The plaintiff alleges a deprivation of rights secured by §§1, 4, 7, 8, 9, 10, 11 and 20 of article first.

"The source of judicially created private causes of action seeking damage for constitutional violations is the United States Supreme Court case of Bivens v. Six

39

Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)."  Aselton

v. Town of East Hartford, 2002 Ct. Sup. 15671 (Conn. Super. Ct. Dec. 3, 2002)

(attached as **Exhibit P**).  The Connecticut Supreme Court has consistently looked to

Bivens and its federal progeny as a guide in determining whether to create a Bivens

action for an alleged state constitutional violation.  See Aselton, supra; Kelley Property

Development, Inc. v. Lebanon, 226 Conn. 314, 334-38 (1993); ATC Partnership v.

Windham, 251 Conn. 597, 613-14 (1999).  Thus far, the Court has been reluctant to

create private causes of action for money damages under the Connecticut Constitution.

See generally, ATC Partnership v. Town of Windham, 251 Conn. 597 (1999) (declining

to recognize a cause of action for alleged violation of substantive due process rights

under article first §8); Kelly Property Development, Inc. v. Lebanon, 226 Conn. 314

(1993) (same).  In Kelley Property, the Court referenced the Bivens line of Supreme

Court cases and noted that, as a general rule, a plaintiff should not be able to maintain

a Bivens action unless he can establish that he would otherwise be without any remedy.

See Id. at 337-38, 339.

    To date, a cause of action for money damages has been created in only one

limited circumstance.  See Binette v. Sabo, 244 Conn. 23 (1998).  In Binette, the Court

allowed a claim for violations of article first, §§7 and 9 of the state constitution for an

unreasonable search and seizure and unlawful arrest by municipal police officers.  Id. at

49-50.  The allegations of Binette were compelling and included a claim that the Chief of

Police grabbed the plaintiff's head and deliberately banged it on the roof of a police

cruiser.[2]   The Binette Court made clear that such a remedy is not available in every

---

[2]In Binette, the defendants, a police chief and one of his officers, allegedly entered the
plaintiffs' home without permission or a warrant.  Id. at 26.  The chief allegedly threatened the

case involving allegations of state constitutional violations.  The Court stated, "our

decision to recognize a ... remedy in this case does not mean that a constitutional

cause of action exists for every violation of our state constitution."  Id. at 47.  The Court

held that "whether to recognize a cause of action for alleged violations of other state

constitutional provisions in the future must be determined on a case-by-case basis."  Id.

at 48.

In Bazzano v. City of Hartford, 1999 Ct. Sup. 15385 (Conn. Super. Ct. Nov. 18,

1999) (attached as **Exhibit Q**), the plaintiff brought an action against the City of

Hartford, the Hartford Police Chief, and various members of the Hartford Police

Department.  The defendants moved to strike those counts of the plaintiff's complaint

alleging violations of the Connecticut Constitution, article first, §§7, 8 and 9 against the

Chief and the City of Hartford, alleging improper and inadequate training of police

officers.  The defendants argued that "no appellate court in Connecticut has recognized

a cause of action for money damages under the state constitution as to a supervisor or

municipality for the alleged unconstitutional conduct of its police officers."  Id. at *15387.

The Court granted the motion to strike, relying on the Connecticut Supreme Court's

ruling in Binette and the United States Supreme Court's ruling in Bivens.  In granting the

motion to strike, and declining to extend a cause of action under the state constitution

for the supervisory role of a police chief and a municipality, the Court stated that "the

deterrent effects of the Bivens remedy would be lost if the court was to imply a damages

cause of action directly against the municipality and a supervisor in the present case."

---

wife with arrest and imprisonment and pushed her into a wall and over a table. Id.  Then,
outside the home, the chief allegedly slammed the husband's head repeatedly against a car,
and the other officer then struck the husband in the head and kicked him while he was on the
ground experiencing an epileptic seizure. Id.

41

Id. The Court noted, "no appellate court in Connecticut has recognized a cause of action under article first, §8 of the state constitution." Id. The Court further noted that the plaintiff had common law tort claims in his complaint, which if proven, could provide the plaintiff adequate redress. See Id. Finally, the Court noted the reluctance of the United States Supreme Court to extend a Bivens-type remedy into new areas. See Id.

Similarly, in Boudreau v. City of Middletown, 1998 Ct. Sup. 7264 (Conn. Super. Ct. June 9, 1998) (Copy attached as **Exhibit R**), the Court once again refused to recognize a viable cause of action under article first of the Connecticut Constitution. In Boudreau, the plaintiffs alleged, *inter alia,* equal protection and due process violations under article first, §§1, 8 and 20 of the Connecticut Constitution. The Court, relying on Bivens and Binette, struck the constitutional claims and declined to recognize viable causes of action for money damages under those three sections of article first, finding instead that the Complaint alleged other viable remedies. Id.

Recently, another Superior Court has examined a damages claim against a municipality pursuant to article first, §§4, 7, 8, 9. and 14 of the Connecticut Constitution, based on allegations of failure to establish and enforce policies; failure to train its employees in the use of force; and failure to supervise. See Aselton v. East Hartford, **Exhibit P**. The Court undertook the following analysis:

> In Kelley Property Development, Inc. v. Lebanon, 226 Conn. 314(1993), our Supreme Court rejected adoption of Bivens liability in Connecticut where the plaintiff contended that state substantive and procedural due process rights were derogated by the action of local zoning officials. While the Court in that case found no cognizable cause of action, it employed the analysis and criteria set forth in the Bivens case in arriving at that conclusion. In using this approach, our Supreme Court implicitly suggested that, in an appropriate matter which satisfied the Bivens criteria, such a cause of action might be viable.

42

Five years later, our Supreme Court found a case where the facts and Constitutional violations claimed fulfilled the <u>Bivens</u> requirements, and the Court created a common-law cause of action. <u>Binette v. Sabo</u>, 244 Conn. 23(1998). However, our Supreme Court has been constant in stating that in deciding whether a <u>Bivens</u> action ought to be permitted for a given state constitutional violation, the <u>Bivens</u> case and its federal progeny would guide Connecticut courts. <u>Kelley Property Development, Inc. v. Lebanon</u>, supra, 338; <u>ATC Partnership v. Windham</u>, 251 Conn. 597, 613 (1999).

In 1994, the United States Supreme Court held that <u>Bivens</u> actions apply only to individuals and not governmental agencies. <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994). Recently, that Court has reiterated and expanded the restriction holding that <u>Bivens</u> actions are available only against individuals and not private corporate entities engaged in governmental business. <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61(2001).

<u>Aselton</u>, **(Exhibit P)**.

The Superior Court (Sferrazza, J.) granted summary judgment in favor of the Town of East Hartford as to the plaintiff's Connecticut Constitutional claims. In so ruling, the Court held as follows:

Applying the limitations pertaining to <u>Bivens</u> actions as announced by the United States Supreme Court, no <u>Bivens</u> action can be maintained directly against the town of East Hartford for any violations of the state constitution.

<u>Aselton</u> **(Exhibit P)**.

Finally, article first, §§10 and 11 of the Connecticut Constitution are wholly inapplicable in the present matter. Article first, §10 provides as follows: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." The plaintiff does not allege what conduct, or how the conduct of the defendants impeded his right to pursue his cause of action in a court of law. In fact, the plaintiff pursued his right to file the subject cause of action.

Accordingly, the plaintiff cannot allege a violation of his rights pursuant to article first, §10 of the Connecticut Constitution.

Similarly, the plaintiff cannot prevail in a claim pursuant to article first, §11. Article first, §11 provides as follows: "The property of no person shall be taken for public use, without just compensation therefor." The plaintiff does not allege what property he claims was taken in violation of article first, §11. In fact, there exists no evidence to support the plaintiff's claim that his property was taken by the defendants for public use without just compensation.

Based on the above, the plaintiff's claim of violations of article first, §§1, 4, 7, 8, 9, 10, 11 and 20 of the Connecticut Constitution fail as a matter of law. Additionally, as indicated above, the conduct of the defendants was lawful as they had probable cause to arrest the plaintiff on the charges levied against him. Finally, the plaintiff has adequate, alternative remedies at law. The defendants are, therefore, entitled to judgment as a matter of law as to the First Count of the Amended Complaint.

**Q.    THE PLAINTIFF'S CLAIM FOR INDEMNIFICATION AGAINST THE TOWN OF STONINGTON PURSUANT TO CONN. GEN. STAT. §7-465 FAILS AS A MATTER OF LAW**

In the First Count of his Amended Complaint, the plaintiff merely alleges that the Town of Stonington is liable for the actions of the individually named defendants pursuant to the provisions of Conn. Gen. Stat. §7-465. (Amended Complaint, Count One at ¶4). Such an allegation is insufficient to properly plead a cause of action pursuant to Conn. Gen. Stat. §7-465. Specifically, "[a] plaintiff bringing suit under [Conn. Gen. Stat.] §7-465 first must allege in a separate count and prove the employee's duty to the individual injured and the breach thereof. Only then may the

44

plaintiff go on to allege and prove the town's liability by indemnification." <u>Sestito v.</u>

<u>Groton</u>, 178 Conn. 520, 527 (1979) (emphasis added). "[I]n a suit under §7-465, any

municipal liability which may attach is predicated on prior findings of individual

negligence on the part of the employee and the municipality's employment relationship

with that individual." <u>Wu v. Town of Fairfield</u>, 204 Conn. 435, 438 (1987).

In the instant matter, the plaintiff has simply pled his claim for indemnification

under a single count. As indicated above, in order to properly plead a cause of action

under Conn. Gen. Stat. §7-465, the plaintiff must first plead a cause of action against

the municipal employee in the First Count, and then plead a cause of action for

indemnification in the Second Count. Accordingly, the plaintiff's complaint is deficient

as a matter of law.

Notwithstanding the above, the plaintiff's claim for indemnification pursuant to

Conn. Gen. Stat. §7-465 must fail as a matter of law as he is unable to establish liability

against the individually named officers. Conn. Gen. Stat. §7-465 is solely an

indemnification statute which allows for a municipality to indemnify one of its employees

in certain circumstances, should that employee have a financial judgment entered

against him or her. Specifically, the statute provides as follows:

> Any town, city or borough … shall pay on behalf of any employee of such
> municipality … all sums <u>which such employee becomes obligated to pay</u>
> by reason of the liability imposed upon such employee by law for damages
> awarded … for physical damages to person or property … if the
> employee, at the time of the occurrence, accident, physical injury or
> damages complained of, was acting within the performance of his duties
> and within the scope of his employment, and if such occurrence, accident,
> physical injury or damage <u>was not the result of any willful or wanton act of
> such employee</u> in the discharge of such duty … No action for personal
> physical injuries or damages … shall be maintained <u>against such
> municipality and employee jointly</u> unless such action is commenced within
> two years …"

Conn. Gen. Stat. §7-465 (emphasis added).

Although §7-465 "is entitled 'assumption of liability for damage caused by employees,' [it] imposes no liability upon a municipality for breach of any statutory duty of its own. The obligation imposed by this statute is indemnification for the legal liability arising out of certain tortious conduct of the municipal employee. The municipality's liability is derivative." Ahern v. New Haven, 190 Conn. 77, 82 (1983) (citations omitted, emphasis added). Thus, in order to sustain a cause of action pursuant to §7-465, there must be a judgment against the municipal employee. Id. at 81.

Accordingly, if the Court finds that it was objectively reasonable for the defendants to believe that probable cause existed for the plaintiff's arrest, and further that the defendants did not violate the plaintiff's constitutional rights in effectuating his arrest, the plaintiff's claim for indemnification against the Town of Stonington must fail as a matter of law. The Town of Stonington is, therefore, entitled to judgment as a matter of law as to the plaintiff's claim for indemnification pursuant to Conn. Gen. Stat. §7-465.

## IV.  **CONCLUSION**

For the foregoing reasons, the defendants respectfully request that summary

judgment enter in their favor as to Menard's Amended Complaint dated October 29,

2002.

DEFENDANTS,
TOWN OF STONINGTON, DAVID
ERSKINE, JERRY DESMOND, RAYMOND
CURIOSO, JOHN CARR AND MICHAEL
PECKHAM


By _____
Beatrice S. Jordan
ct22001
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114-1190
(860) 249-1361
(860) 249-7665 (Fax)
Juris No.:  28228
bjordan@hl-law.com

47

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 26th day of November, 2003.

R. Edward Phillips, Esquire
Law Office of Warren Miller
One Union Plaza, 2nd floor
P.O. Box 116
New London, CT  06320

Beatrice S. Jordan

48