## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EDWARD BROWN, ET AL        :       NO.: 3:01CV2374 (CFD)
       :
v.        :
       :
TOWN OF STONINGTON, ET AL        :       MARCH 25, 2005

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

Pursuant to D.Conn.L.R. 7, 56 and Fed.R.Civ.P. 56, the defendants submit the following memorandum of law in support of their motion for summary judgment dated March 25, 2005.

## I.     BACKGROUND.

The plaintiff, Edward Brown ("Brown"), has brought this action by way of a two count Amended Complaint dated October 29, 2002. This action arises out of the plaintiff's arrest on June 29, 2001 at the Stonington Town Docks.

### A.     PLAINTIFF'S ARREST ON JUNE 29, 2001

The plaintiff went to the Stonington Town Docks on the evening of June 29, 2001, accompanied by Jeffrey Menard[1], where Brown intended to dive for lobsters. Police were called to the scene by witnesses, Cheryl and Phillip Henry, who reported a problem at the docks. The subject dock had a clearly posted sign which read, "No Scuba Diving or Swimming at Town Dock."

Upon arrival at the scene, the officers observed that both Menard and his clothing were wet. Menard conceded that he had been in the water. Brown, who was

---

[1] Mr. Menard was a plaintiff in this action but he has stipulated for dismissal on all of his claims against the defendants. *See* Doc. #80.

still underwater diving for lobsters at the time police arrived on the scene, refused to exit the water with the bag he was carrying despite being ordered to do so by the officers. Brown was belligerent and proceeded to empty the bag he was carrying into the water despite repeated orders by the officers to refrain from doing so.

Menard was arrested and charged with Breach of Peace pursuant to Conn. Gen. Stat. §53a-181, and Criminal Trespass pursuant to Conn. Gen. Stat. §53a-109, and was released on a Promise to Appear. Brown was charged with Breach of Peace pursuant to Conn. Gen. Stat. §53a-181, Criminal Trespass pursuant to Conn. Gen. Stat. §53a-109, Interfering with an Officer pursuant to Conn. Gen. Stat. §53a-167(a), Possession of Marijuana pursuant to Conn. Gen. Stat. §21a-279(c), Possession of Drug Paraphernalia pursuant to Conn. Gen. Stat. §21a-267, and Scuba Diving Without Proper Flags pursuant to Conn. Gen. Stat. §15-135(a), and released on a $1,000 non-surety bond.

The defendants hereby incorporate by reference the Statement of Facts contained in the attached Local Rule 56(a)1 Statement which provides a more detailed background of the incident.

### B.    PLAINTIFF'S COMPLAINT

In the First Count of the Amended Complaint, Brown alleges that he was wrongfully arrested and charged with criminal trespass, breach of peace, interfering with an officer, possession of marijuana, possession of drug paraphernalia, and scuba diving without proper flags.  (Amended Complaint, Count One, ¶10).  Brown further alleges a myriad of federal and state constitutional claims.  See Amended Complaint, Count One, ¶23.

Brown also alleges numerous state law claims, namely that the defendants, "deprived [him] of [his] rights to be free from assault and battery, false imprisonment, abuse of process, malicious prosecution, and intentional infliction of emotional distress." (Amended Complaint, Count One, ¶24). Additionally, in the First Count of the Amended Complaint, Brown alleges indemnification by the Town of Stonington, pursuant to Conn. Gen. Stat. §7-465, for the actions of the named defendants as set forth above. (Amended Complaint, Count One, ¶4). Finally, Brown appears to allege a failure to train and supervise claim against Chief of Police David Erskine and Police Captain Jerry Desmond. (Amended Complaint, Count One, ¶¶7-8). The Second Count of the Amended Complaint alleges a claim for intentional infliction of emotional distress as to each defendant. (Amended Complaint, Count Two).

### C.    Prior Proceedings.

This case was initially commenced in the state courts of Connecticut and was removed by the defendants on December 20, 2001. Doc. #1. Following the filing of the report of the parties planning meeting, the discovery deadline was set for March 2, 2003 with a dispositive motion deadline of April 1, 2003. During discovery, plaintiffs' amended their complaint. Docs. #29, 32. Discovery was extended to August 15, 2003 with dispositive motions due September 1, 2003. Doc. #36 and endorsement order, 36-1.

On September 4, 2003, Attorney R. Edward Philips, who was representing both plaintiffs, moved to withdraw from representing Edward Brown. Doc. #41. On November 13, 2003, Edward Brown moved for an appointment of counsel. Doc. #46. On November 26, 2003, the defendants filed a comprehensive motion for summary judgment against both plaintiffs. See Docs. #48-54. Plaintiffs moved to "quash" the recently filed motion for summary judgment or in the alternative an extension of time to

respond on December 3, 2003. Doc. #55. Attorney Philips' filed a second motion to withdraw from his representation of Edward Brown. Doc. #65. That motion was granted. Doc. #66. The court's decision of August 17, 2004 denied Mr. Brown's motion to appoint counsel and denied, without prejudice, the defendants' pending motion for summary judgment. Id.  Plaintiff Jeffery Menard stipulated for dismissal on March 1, 2005. Doc. #80.

The defendants now renew their motion for summary judgment as to Edward Brown.

## II.    LAW AND ARGUMENT.

### A.    STANDARD OF REVIEW.

Fed.R.Civ.P. 56(c) requires the entry of summary judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A "material fact" is one whose resolution will affect the ultimate determination of the case.  *Id.*  In determining whether a material issue of fact exists, the Court must resolve all ambiguities and draw all inferences against the moving party.  *See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S.Ct. at 251*3.  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." *Samuels v. Smith*, 839 F. Supp. 959, 962 (D. Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256, 106 S.Ct. at 2510; *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 265 (1986). "Neither courts nor defendants should be subjected to trials which can be little more than harassment." *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. *See Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987). Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial. *See First National Bank of Clinton, Ill. v. Insurance Co. of North America*, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the District Court properly relied on documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under

one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179 (9th Cir. 1988); *Edward B. Marks Music Corp. v. Stasny Music Corp.*, 1 F.R.D. 720 (S.D.N.Y. 1941).

### B.    BROWN'S CLAIMS AGAINST RAYMOND CURIOSO FAIL AS A MATTER OF LAW AS HE WAS NOT PRESENT OR INVOLVED IN BROWN'S ARREST

Section 1983 imposes liability upon a defendant only where he/she personally "subjects or causes to be subjected the complainant to a deprivation of a right secured by the Constitution and laws."  *Williams v. Smith* 781 F.2d 319, 323 (2d Cir. 1986); *see also Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 336 (S.D.N.Y. 1999); *Snider v. Dylag*, 188 F.3d 51, 54 (2d Cir. 1999); *Kia v. McIntyre*, 2 F. Supp. 2d 281, 294 (E.D.N.Y. 1998). "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983."  *Williams v. Smith*, 781 F.2d at 323; *see also Repress v. Coughlin*, 585 F. Supp. 854, 859 (S.D.N.Y. 1984).  Where a plaintiff is unable to adduce any evidence demonstrating the personal involvement of a defendant in the alleged deprivation of rights under §1983, the action must be dismissed as to that defendant.  *Kia v. McIntyre*, 2 F. Supp. 2d at 294; *Repress v. Coughlin*, 585 F. Supp. at 859; *Sprau v. Coughlin*, 997 F. Supp. 390, 394 (W.D.N.Y. 1998).

Brown is unable to establish any involvement by Officer Raymond Curioso in this matter.  Officer Curioso was not present, nor did he participate in Brown's arrest. (Affidavit of Raymond Curioso, attached as Exhibit M).  In fact, Officer Curioso was not on duty at the time of Brown's arrest on June 29, 2001.  (Exhibit M).  Brown is, thus,

- 6 -

unable to establish that there was any involvement on the part of Officer Curioso, or that he was even present, with regard to the incidents alleged in his complaint. Accordingly, the defendant, Raymond Curioso, is entitled to judgment as a matter of law as to Brown's Amended Complaint in its entirety.

### C. BROWN'S CLAIMS OF FALSE ARREST AND WARRANTLESS ARREST ARE BARRED UNDER THE DOCTRINE OF QUALIFIED IMMUNITY.

In the First Count of his Amended Complaint, Brown alleges a cause of action pursuant to 42 U.S.C. §1983 for a violation of his right to freedom from unreasonable arrest, warrantless arrest and arrest without probable cause under the Fourth and Fourteenth Amendment to the U.S. Constitution. (Amended Complaint, Count One, ¶¶20, 23). The right to be free from false arrest is derived from the Fourth Amendment. *See Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir. 2002) (holding that "§1983 claim for false arrest derives from an individual's right to remain free from unreasonable seizures."). However, a cause of action for false arrest does not arise under the Fourteenth Amendment to the U.S. Constitution. *See Albright v. Oliver*, 510 U.S. 266 (1994) (holding that false arrest claims under §1983 are to be evaluated under the Fourth Amendment and not under the Fourteenth Amendment substantive due process provision). Accordingly, the defendants treat Brown's false arrest and warrantless arrest claims as pursuant to the Fourth Amendment to the U.S. Constitution and 42 U.S.C. §1983.

Section 1983 provides a right of action against any person who, acting under color of law, deprives another of a right, privilege, or immunity secured by the Constitution or federal laws. *See* 42 U.S.C. §1983; *Rendell-Baker v. Kohn*, 457 U.S. 830, 835, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Section 1983 does not create any

substantive rights, but rather provides a procedure to redress the deprivation of federal rights which are guaranteed elsewhere. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Thomas v. Roach*, 165 F.3d 137, 142 (2nd Cir. 1999). In order to succeed on a §1983 claim, the plaintiff must establish that the defendant had the requisite state of mind for the underlying violation. *Board of County Comm'rs of Bryan County, Okla v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

The federal doctrine of qualified immunity will protect police officers against §1983 suits unless their actions violate clearly established constitutional or statutory rights, and a reasonable officer would have known that the challenged conduct violated that established right. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). The test to be applied in the instant case is whether it was "objectively reasonable" for Officers Peckham and Carr to believe that they were not violating any of the plaintiffs' constitutional rights to be free from arrest absent probable cause or a warrant. *See Lennon*, 66 F.3d at 422.

An arresting officer is entitled to qualified immunity from a claim for unlawful arrest if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Lennon v. Miller, supra* at 423, *quoting Golino v. City of New Haven*, 950 F.2d 864, 870 (1991), cert. denied, 505 U.S. 1221, 112 S.Ct. 3032 (1992). Additionally, an arrest without a warrant is deemed valid if it is supported by probable cause. *See Wong Sun v. United States*, 371 U.S. 471, 479 (1963).

"Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id., citing Dunaway v. New York*, 442 U.S. 200, 208 n.9, 99 S.Ct. 2248, 2254 n.9 (1979) (internal quotes omitted).  For qualified immunity purposes, the issue is not whether probable cause in fact exists but whether "arguable" probable cause exists.  *See Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) *citing, Myers v. Morris*, 810 F.2d 1437, 1455 (8th Cir. 1987).  Arguable probable cause exists when a reasonable police officer in the same circumstances, and possessing the same knowledge as the officer in question, could have reasonably believed that probable cause existed in the light of well established law.  *See id*.

In the instant matter, Brown cannot prevail on his false arrest and warrantless arrest claim against the individual defendant officers, as he pled guilty to the charge of Breach of Peace during the criminal proceedings against him. "A §1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest. *See, e.g., Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."), *cert. denied*, 517 U.S. 1189 (1996)." *Fulton v. Robinson*, 289 F.3d 188, 194, (2nd Cir. 2002).  "It is clear that if the plaintiff has been convicted of either of the crimes with which he was charged, or of any lessor included offenses, this would be conclusive proof of probable cause which would defeat his claim of [false arrest or] false imprisonment. *See, Pouncey v. Ryan*, 396 F.Supp. 126, 127 (D.Conn. 1975)." *Konon v. Fornal*, 612 F.Supp. 68, 71 (D.Conn.

1985).   Accordingly, Brown's claims of false arrest and warrantless arrest fail as a matter of law.

Notwithstanding the above, it was objectively reasonable for the officers to believe that they had probable cause to arrest Brown in this matter.  Brown was charged with Breach of Peace pursuant to Conn. Gen. Stat. §53a-181, Criminal Trespass pursuant to Conn. Gen. Stat. §53a-109, Interfering with an Officer pursuant to Conn. Gen. Stat. §53a-167(a), Possession of Marijuana pursuant to Conn. Gen. Stat. §21a-279(c), Possession of Drug Paraphernalia pursuant to Conn. Gen. Stat. §21a-267, and Scuba Diving Without Proper Flags pursuant to Conn. Gen. Stat. §15-135(a).  The undisputed facts relevant to the determination of the objective reasonableness of Officer Peckham and Officer Carr's belief that they were not violating any of the plaintiff's constitutional rights to be free from arrest absent probable cause or a warrant are as follows:

Upon dispatch and investigation, Officer Michael Peckham was advised by Cheryl Henry that her husband, Phillip Henry, was located on the town dock and requested the police for a problem at the docks.  Officers interviewed Mr. and Mrs. Henry about the complaint.  Phillip and Cheryl Henry reported what had transpired, and further advised the officers that many fishermen have pots in the water in the area of the docks, and that many of the fishermen, including Henry, have had lobsters stolen in the recent past. The subject dock had a clearly posted sign which read, "No Scuba Diving or Swimming at Town Dock."  (Police Report re Jeffrey Menard, Exhibit B) (Peckham Affidavit, Exhibit C).

The portion of the subject area where the plaintiffs were located was leased to the Stonington Small Boat Association, Inc., and had a large posted sign which read in pertinent part, "1.  This facility is leased from the Waterfront Commission of the Town of Stonington by the Stonington Small Boat Association, Inc.  Use is limited to members and guests of the Association." Officer Peckham and Officer Carr observed the plaintiff, Edward Brown, in dive gear in the water.  Brown was located near the retaining wall located adjacent to the dock.  Officer Peckham walked over to the retaining wall portion of the dock  and was about ten (10) feet away from Brown.  Officer Peckham instructed Brown to exit the water and bring with him the large bag he was carrying.  Brown began to shout profanity at Officer Peckham. Brown was aware that he was conversing with a police officer at the time that he was instructed to get out of the water.

Rather than comply with the officers' lawful commands, Brown proceeded to empty lobsters out of the bag he was carrying.  Officer Peckham instructed Brown to stop emptying the bag and exit the water numerous times.  Brown responded with additional profanity. Officer Peckham informed Brown that he was going to be arrested, however, Brown continued to empty the bag and did not exit the water as instructed. Once Brown had completely emptied the bag of lobsters, he exited the water.  Brown did not exit the water right away although he had been instructed to do so.

Brown was walked away from the beach to his truck, upon which Brown opened the truck and presented his lobster license.  Brown was placed under arrest and handcuffed.  Brown's vehicle was searched, incident to his arrest, at which time a metal smoking device with resin was located in the ashtray of the vehicle, along with a bag of greenish-brown plant-like material.  A dive flag was also located in the front seat of the vehicle. Officer Peckham subjected a small portion of the greenish-brown plant-like

material from the bag to a Duquenois-Levine field test and observed a positive reaction

indicative of the presumptive presence of marijuana.

The undisputed facts demonstrate that it was objectively reasonable for Officers

Peckham and Carr to believe that probable cause existed to arrest Brown for Breach of

Peace.  Connecticut General Statutes §53a-181 defines Breach of the Peace, in

relevant part, as:

> A person is guilty of breach of the peace when, with intent to cause
> inconvenience, annoyance or alarm, or recklessly creating a risk thereof,
> he: (1) Engages in fighting or in violent, tumultuous or threatening
> behavior in a public place; . . . or (5) in a public place, uses abusive or
> obscene language or makes an obscene gesture . . .

Conn. Gen. Stat. §53a-181.

As a matter of law, Officers Peckham and Carr could have reasonably believed

that, based on their own observations at the scene, they had probable cause to arrest

the plaintiff on the charge of Breach of Peace.  Officers Peckham and Carr personally

observed Brown's belligerent conduct, and use of abusive and obscene language, when

instructed to exit the water.  Under these circumstances, it was reasonable for Officers

Peckham and Carr to believe that they had probable cause to arrest Brown for the crime

of Breach of Peace.  As a result, Officers Peckham and Carr are protected under

qualified immunity as to plaintiff's claim of false arrest and warrantless arrest for Breach

of Peace.

The undisputed facts also demonstrate, as a matter of law, that it was objectively

reasonable for Officers Peckham and Carr to believe that probable cause existed to

arrest Brown for Interfering with an Officer.  The Connecticut General Statutes define

Interfering with an Officer as follows:  "A person is guilty of interfering with a police

officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties." Conn. Gen. Stat. §53a-167a. The plaintiff concededly refused to follow the orders of the officers to exit the water with the bag he was carrying. In fact, the plaintiff concedes that he emptied the bag despite being ordered not to do so by the officers, and did not exit the water right away. Under these circumstances, it was reasonable for Officers Peckham and Carr to believe that they had probable cause to arrest Brown for the crime of Interfering With an Officer. As a result, Officers Peckham and Carr are protected under qualified immunity as to plaintiff's claim of false arrest and warrantless arrest for Interfering with an Officer.

Likewise, the undisputed facts demonstrate that it was objectively reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest Brown for Criminal Trespass. Connecticut General Statutes §53a-109 defines Criminal Trespass as follows:

> A person is guilty of criminal trespass . . . when, knowing that he is not . . . or privileged to do so: (1) He enters or remains in premises which are posted in a manner prescribed by law or reasonably likely to come to the attention of intruders . . . or (2) he enters or remains in any premises for the purpose of hunting, trapping or fishing.

Conn. Gen. Stat. §53a-109.

As a matter of law, it was objectively reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest Brown for Criminal Trespass based upon their observations of Brown in the water in diving gear. As indicated above, the subject dock had a clearly posted sign which explicitly prohibited scuba diving or swimming. Additionally, the portion of the subject area where the plaintiffs were located was leased to the Stonington Small Boat Association, Inc., and had a large posted sign which designated "for use by members only." Under these circumstances, it was

reasonable for Officers Peckham and Carr to believe that they had probable cause to arrest Brown for the crime of Criminal Trespass. As a result, Officers Peckham and Carr are protected under qualified immunity as to plaintiff's claim of false arrest and warrantless arrest for Criminal Trespass.

Finally, the undisputed facts demonstrate that it was objectively reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest Brown with regard to the remaining charges, namely Possession of Marijuana pursuant to Conn. Gen. Stat. §21a-279(c), Possession of Drug Paraphernalia pursuant to Conn. Gen. Stat. §21a-267, and Scuba Diving Without Proper Flags pursuant to Conn. Gen. Stat. §15-135(a). As indicated above, a search of Brown's vehicle, incident to his arrest, revealed a metal smoking device with resin, a bag of greenish-brown plant-like material, and a dive flag. The plant-like substance tested positive for marijuana. Under these circumstances, it was reasonable for Officers Peckham and Carr to believe that they had probable cause to arrest Brown for the crimes of Possession of Marijuana, Possession of Drug Paraphernalia, and Scuba Diving Without Proper Flags. As a result, Officers Peckham and Carr are protected under qualified immunity as to plaintiff's claim of false arrest and warrantless arrest for Possession of Marijuana, Possession of Drug Paraphernalia, and Scuba Diving Without Proper Flags.

The defendants are, therefore, entitled to judgment as a matter of law with regard to Brown's claims of false arrest and warrantless arrest.

D.   **BROWN'S STATE LAW CLAIMS OF FALSE ARREST AND WARRANTLESS ARREST ARE BARRED UNDER THE DOCTRINE OF GOVERNMENTAL IMMUNITY**

Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. *Elliot v. City of Waterbury*, 245 Conn. 385, 411 (1998). Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. *See Heigl v. Bd. of Ed.*, 218 Conn. 1, 5 (1991). In contrast, "[m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." *Mulligan v. Rioux*, 229 Conn. 716, 727 (1994) (Citations omitted; internal quotations omitted). Municipal employees are entitled to governmental immunity for acts which require the sound exercise of discretion. *Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 180-181 (1988). "The hallmark of a discretionary act is that it requires the exercise of judgment." *Lombardi v. Edward J. Peters., P.C.,* 252 Conn. 623, 628 (2000). The determination of whether an act is discretionary or ministerial can be decided as a matter of law where it is apparent from the allegations in the complaint. *See Evon v. Andrews*, 211 Conn. 501, 505-507 (1989); *Lombardi v. Edward J. Peters., P.C.*, *supra*, 252 Conn. 628.

Policing the community and investigating those who break the law is a governmental function which requires the exercise of discretion. *Gordon v. Bridgeport Housing Authority, supra*, 208 Conn. 180-181. Similarly, several Connecticut Superior Court cases have held that the process by which a police officer decides to make an arrest or conduct an investigation involves discretionary actions. *See Lipka v. Madoule*, 2001 WL 1712685 (Conn.Super); *Mitka v. Barre*, 2001 WL 651171 (Conn. Super.); *Anderson v. City of New London*, 1999 WL 162791 (Conn.Super. Ct.); *Castorina v.*

*Stewart*, 1998 WL 309393 (Conn.Super. Ct.); *Elinsky v. Marlene*, 1997 WL 729102

(Conn.Super. Ct.) (copies attached as Exhibits N-R).

At all times mentioned in the Amended Complaint, the defendants were acting

within the scope of their employment and performing their duties as members of the

Stonington Police Department.  (Amended Complaint, Count One, ¶5.)  In this case,

Brown's claims arise directly from the alleged actions and inactions of members of the

Stonington Police Department.  The investigation of Phillip Henry's complaint of a

problem at the town dock, and subsequent arrest of the plaintiffs, is the very type of

discretionary governmental activity to which the doctrine of governmental immunity

applies.  *See e.g., Gordon v. Bridgeport Housing Authority, supra*, 208 Conn. 180-181.

As the Connecticut Supreme Court has noted, "we do not think that the public interest is

served by allowing a jury of laymen with the benefit of 20/20 hindsight to second-guess

the exercise of a policeman's discretionary professional duty.  Such discretion is no

discretion at all."  *Shore v. Stonington*, 197 Conn. 147, 157 (1982).  The actions of the

defendants are, therefore, protected pursuant to the doctrine of governmental immunity.

Accordingly, summary judgment should enter on behalf of the defendants.

**E.    BROWN'S CLAIMS OF EXCESSIVE FORCE PURSUANT TO
        THE FOURTEENTH AMENDMENT AND §1983 FAIL AS A
        MATTER OF LAW AS THAT AMENDMENT DOES NOT
        PROVIDE THE PROPER VEHICLE FOR EXCESSIVE FORCE
        CLAIMS IN THIS CASE**

In Count One of the complaint, Brown alleges that the defendants deprived him

"of [his] rights to . . . freedom from the use of unreasonable force by a police officer . . .

[which are] secured to [him] by the provisions of the First, Fourth, Eighth and Fourteenth

Amendments to the United States Constitution and by Title 42 U.S.C. §1983 and

§1988 . . . ."  (Amended Complaint, Count 1, ¶23).  To the extent that Count One

alleges a claim for excessive force based on the Fourteenth Amendment, that claim fails as a matter of law as that Amendment does not provide the plaintiff with the proper means for redress of an excessive force claim in this case. Because "excessive force used by officers arresting suspects implicates the Fourth Amendment's prohibition on unreasonable seizures, rather than the Fourteenth Amendment's guarantee of substantive due process," summary judgment is appropriate as to any excessive force claim brought under the Fourteenth Amendment.  *See Thomas v. Roach*, 165 F.3d 137, 144-45 (2d Cir. 1999).   Accordingly, summary judgment should enter on behalf on the defendant officers on the claim for excessive force as alleged in Count One.

### F. BROWN'S CLAIMS UNDER THE EIGHTH AMENDMENT FAIL AS A MATTER OF LAW AS THE UNDISPUTED FACTS SHOW THAT THE EIGHTH AMENDMENT'S GUARANTEES ARE INAPPLICABLE UNDER THE CIRCUMSTANCES IN THIS CASE.

The Eight Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const., Amend VIII.  While Brown has alleged a claim pursuant to the Eighth Amendment, he has not set forth a factual basis for the same.

Brown improperly set forth a claim that the defendants deprived him of his Eighth Amendment right to be free from cruel and unusual punishment.  Brown's allegations of pre-incarceration excessive force are subject to Fourth Amendment review, and not the Eighth Amendment. In contrast, in *Graham v. Connor*, 490 U.S. 386 (1989), the Court recognized that "all claims that law enforcement officers have used excessive force -- deadly or not --in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness"

standard, rather than under a "substantive due process approach." *Id.* at 395; s*ee also, Calamia v. City of New York*, 879 F.2d 1025, 1033-35 (2d Cir. 1989).

In the instant case, Brown's Amended Complaint sets forth allegations of excessive force by the defendant police officers in the course of his arrest. Accordingly, Brown's claims should be analyzed under the Fourth Amendment, and not the Eighth Amendment, which applies to criminal punishments imposed by law. *See Ingraham v. Wright*, 430 U.S. 666 (". . . every decision of this Court considering whether a punishment is 'cruel and unusual' with in the meaning if the Eighth Amendment . . . has dealt with criminal punishment.").

Brown improperly set forth a claim that the defendants violated his Eighth Amendment rights by imposing excessive bail and/or fines as no excessive bail or fine was imposed. Brown was released on a $1,000 non-surety bond. (Brown Conviction Record, attached as Exhibit S). Brown was also not required to make bail, post bond, or pay a fine prior to his release. Accordingly, Brown cannot maintain a claim for violation of his Eighth Amendment rights. Even so, any actions by the officers or the Town relative to bail-setting are protected by absolute judicial immunity. *See Clynch v. Chapman*, 285 F.Supp.2d 213, (D.Conn. 2003). The defendants are, therefore, entitled to judgment as a matter of law as to Brown's Eighth Amendment claim.

**G.   BROWN'S CLAIMS OF EXCESSIVE FORCE PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS AND §1983 FAIL AS A MATTER OF LAW AS THE OFFICERS' ACTIONS WERE OBJECTIVELY REASONABLE**

An analysis of an excessive force claim under the Fourth Amendment requires an objective analysis of the reasonableness of the police officers' actions in light of the totality of circumstances surrounding the incident. *See Saucier v. Katz*, 533 U.S. 207;

*Graham v. Connor*, 490 U.S. 395-97; *Lennon v. Miller*, 66 F.3d 425. The defense of qualified immunity is available against claims of excessive force. *Id., citing, Finnegan v. Fountain*, 915 F.2d 817, 822-23 (2d Cir. 1990); *Saucier v. Katz*, 533 U.S. 205. The qualified immunity analysis involves a two-step analysis: first, the plaintiff must allege a violation of a clearly established constitutional or statutory right; second, qualified immunity will be denied only if a reasonable official should have known that the challenged conduct violated that established right. *See Thomas v. Roach*, 165 F.3d 142-43.

Even where a clearly established constitutional right is found, government officials can still enjoy the protection of qualified immunity. *See Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998). The objective reasonableness inquiry is fact-specific to any given case, Graham v. Connor, 490 U.S. 396, and "the objective reasonableness test is met . . . if officers of reasonable competence could disagree on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 420, *quoting, Malley v. Briggs,* 475 U.S. 335, 341 (1986). In the context of an excessive force claim, "the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Lennon v. Miller*, 66 F.3d 425 (internal quotation marks omitted.).

The examination of the reasonableness of an officer's actions is not based on review of all the facts long after the events themselves are over. Rather, "the reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene." *Graham v. Connor,* 490 U.S. at 396. Unquestionably, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense,

uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* at 397.

Summary judgment has been granted in numerous cases involving claims of excessive force on the defense of qualified immunity. *See generally, Saucier v. Katz*, 533 U.S. 194 (reversing decision of Court of Appeals with instructions to apply qualified immunity to excessive force claim); *Vaughan v. Cox*, 264 F.3d 1027 (11th Cir. 2001); *Sinclair v. City of Des Moines*, 268 F.3d 594 (8th Cir 2001); *Tierney v. Davidson*, 113 F.3d 189 (2d Cir. 1998); *Salim v. Proulx*, 93 F.3d 86 (2d Cir. 1996); *Lennon v. Miller*, 66 F.3d 416; *Jones v. Web*, 45 F.3d 178, 184 (7th Cir. 1995); *Eidwards v. Gles*, 51 F.3d 155, 157 (8th Cir. 1995); *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994); *Banks v. Person*, 49 F. Supp. 2d 119 (E.D.N.Y. 1999).

For the purposes of this inquiry, the undisputed facts relevant to the determination of objective reasonableness show that Officer Peckham's and Officer Carr's actions were objectively reasonable:  Officers Peckham and Carr both instructed Brown to exit the water and bring with him the large bag he was carrying.  Brown refused and responded with profanity, objecting to the flashlight pointed at him.  Despite orders to the contrary, Brown proceeded to empty lobsters out of the bag he was carrying.  Officers Peckham and Carr continued to instruct Brown to stop emptying the bag and exit the water numerous times.  Brown responded with additional profanity.

Once Brown had completely emptied the bag of lobsters, he exited the water.  As Brown exited the water, he was escorted off the sandy launch area of the dock by Officer Carr.  Brown tripped and fell in the sandy launch area after he exited the water. Officer Carr removed a dive knife which was strapped to Brown's calf.  Brown was

placed under arrest and handcuffed.  Phillip Henry, eyewitness to the incident, avers that, at no time, did the officers act in an abusive manner towards Brown, throw Brown into the rocks, or push, shove or abuse Brown in any manner.

In the instant matter, it was reasonable for Officer Peckham to believe that probable cause existed for him to arrest the plaintiff given the plaintiff's actions observed by Officer Peckham.  Additionally, Officer Peckham was also justified by state statute in his use of force against the plaintiff.  Once probable cause existed to arrest the plaintiff, Officer Peckham was authorized to use reasonable force to effectuate the arrest pursuant to C.G.S. §53a-22.[2]

There is no evidence to support the plaintiff's claim that he was assaulted, knocked to the ground by the officers' fists and police equipment, or thrown against the police cruiser.  Based upon the plaintiff's behavior and refusal to exit the water as instructed, it was certainly reasonable for Officer Carr to take hold of the plaintiff's arm and escort him out of the water.  Additionally, Officers Peckham and Carr both attest to the fact that the plaintiff fell as he was exiting the water, and was not knocked to the ground as alleged.  (Peckham Affidavit, Exhibit C; Carr Affidavit, Exhibit D).  Finally, the independent witness, Phillip Henry, provided a sworn statement in which he stated that the officers at no time were abusive towards Brown while effectuating his arrest.  (July 27, 2001 Henry Statement, Exhibit L).

---

[2] C.G.S. §53a-22(b) provides, … "[A] peace officer … is justified in using physical force upon another person when and to the extent that he reasonably believes such to be necessary to:  (1) Effect the arrest or prevent the escape from custody of a person whom he reasonably believes to have committed an offense, unless he knows that the arrest or custody is unauthorized …"

The plaintiff's unsubstantiated allegations are insufficient to prevail on a claim of excessive force. The defendants are, therefore, entitled to judgment as a matter of law with regard to Brown's claims of excessive force.

### G.   BROWN'S CLAIMS OF UNREASONABLE SEARCH AND SEIZURE FAIL AS A MATTER OF LAW

Brown further alleges that the defendants deprived him of his right to be free from unreasonable search and seizure. (Amended Complaint, Count One, ¶23). As indicated above, the defendant officers had probable cause to arrest Brown for Breach of Peace, Criminal Trespass, and Interfering with an Officer. Accordingly, there was no unreasonable seizure of the plaintiff at the time of his arrest. Additionally, once Brown had been arrested, the defendant officers were justified in their search of his person.

Where there is a lawful custodial arrest, the officers may conduct a full, contemporaneous search of the person without first obtaining a warrant. *See New York v. Belton*, 453 U.S. 454, 458 (1981); *Chimel v. California*, 395 U.S. 752 (1969); *United States v. Robinson*, 414 U.S. 218 (1973). When a lawful custodial arrest of an occupant of an automobile is made, the officer search the passenger compartment of the automobile." *New York v. Belton*, 453 U.S. at 460. Additionally, the officer may also search the contents of any containers found within the passenger compartment. Id. In the instant matter, the search of Brown's vehicle was made contemporaneously with his lawful custodial arrest. Accordingly, the search of Brown's vehicle was permissible.

The defendants are, therefore, entitled to judgment as a matter of law as to Brown's claim of unreasonable search and seizure.

### H.    BROWN'S CLAIMS REGARDING A VIOLATION OF HIS FIRST AMENDMENT RIGHTS FAILS AS A MATTER OF LAW

In his Amended Complaint, the plaintiff alleges that the conduct of the defendants chilled him in the "exercise of [his] right to petition for the redress of grievances under the First and Fourteenth Amendments to the United States Constitution," and deprived him of his rights to freedom of speech.  (Amended Complaint, Count One, ¶¶20, 23).  The plaintiff's claims for a violation of his First Amendment rights fails as a matter of law as the plaintiff lacked a clearly established constitutional right pursuant to the First Amendment at the time of his encounter with Officers Peckham and Carr.

The plaintiff must present facts which indicate a deprivation of constitutional rights.  *See Spear v. West Hartford*, 952 F.2d 63, 67 (2d Cir. 1992).  The defense of qualified immunity shields government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *McEvoy v. Spencer*, 124 F.3d 92, 97 (2d Cir. 1997), *quoting Harlow v. Fitzgerald*, 457 U.S. 818.

In the instant matter, Brown does not specify how his right to freedom of speech and freedom to petition for redress of grievances was violated.  Brown does allege that he filed a written complaint with the police department, and subsequently withdrew the same after harassment and intimidation by the investigator of his complaint.  (Amended Complaint, Count One, ¶21).  Brown further alleges that he was lawfully in a public place, and was lawfully diving for lobsters.  (Amended Complaint, Count One, ¶9).  The plaintiff's allegations are insufficient to rise to the level of a constitutional deprivation of his First Amendment rights.

The U.S. Supreme Court has held that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *U.S. Postal Service v. Greenburgh Civic Assns.*, 453 U.S. 114, 129 (1981). Additionally, the Court has held that "the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.*, at 129-30.

Brown did not have a clearly established, guaranteed right to be at the Stonington Town Dock and engage in activity which was in violation of the law. As indicated above, Brown was not at the subject premises for a lawful purpose as he admittedly entered the water and engaged in a scuba dive contrary to the clearly posted signs prohibiting the same, thereby constituting a criminal trespass. Moreover, he engaged in belligerent behavior in a public place, refused to exit the water with the bag he had been carrying despite being instructed to by the officers, and proceeded to empty the bag he had been carrying despite the officers' order to the contrary, thereby constituting a breach of peace, and interference with an officer. The facts in the present matter do not rise to the level of a deprivation of Brown's First Amendment rights. There is no evidence to suggest that the conduct of the defendants had any actual chilling effect on Brown's right to freedom of speech.

While the plaintiff alleges that his First Amendment rights were violated in that he withdrew his complaint filed with the police department regarding his arrest due to the alleged harassment and intimidation by the investigating officer, the evidence does not support such a conclusion. Following his arrest, Brown filed a formal written complaint with the Stonington Police Department alleging that the arresting officer and his partner had "mishandled" him, and were abusive to him. (Formal Written Complaint by Edward

Brown, attached as Exhibit H).  Captain Jerry Desmond was assigned to investigate Brown's complaint.  (Affidavit of David Erskine, attached as Exhibit J; Affidavit of Jerry Desmond, attached as Exhibit K).  On July 30, 2001, Brown voluntarily requested that his complaint be withdrawn.  (Correspondence from Edward Brown dated July 30, 2001, attached as Exhibit I).  Brown indicated that the basis for his withdrawal of the complaint was the fact that the police department refused to postpone the investigation of his complaint until such time as the criminal charges against Brown were resolved.  (Exhibit I).  Nonetheless, the plaintiff makes the unsubstantiated claim that he withdrew his complaint after being harassed and intimidated by Captain Desmond, apparently based upon the fact that Captain Desmond allegedly broke a phone in his home.  (Brown Deposition, Exhibit G, at p.70).  Despite the plaintiff's allegations, there is no evidence to support the plaintiff's claim that he was harassed or intimidated by Captain Desmond.

Likewise, there is no evidence that the conduct of the defendants prevented Brown from speaking out about this incident as he has pursued his right to file the subject lawsuit as to the same.

As the conduct of the defendants did not deprive the plaintiff of his First Amendment rights, he cannot maintain an action under §1983 for violation of the same. Even if the Court finds that the plaintiff had a clearly established right under the First Amendment, the defendants are entitled to qualified immunity as it was objectively reasonable for them to believe that probable cause existed for Brown's arrest at the Stonington Town Docks on the charges levied against him.  The defendants are, therefore, entitled to judgment as a matter of law as to the plaintiff's First Amendment claim.

I.    **BROWN FAILS TO STATE A CLAIM AGAINST THE TOWN OF STONINGTON**

The United States Supreme Court has held that a municipality may be held liable only where the deprivation of a Constitutional right was the result of a municipal policy or custom.  *See Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2427, 56 L.Ed.2d 611 (1978); *Oklahoma v. Tuttle*, 471 U.S. 808, 810, 105 S.Ct. 2018, 56 L.Ed.2d 791 (1985).  Thus, in order to state a claim against a municipality pursuant to §1983, a plaintiff must:  (1) prove the existence of a municipal policy or custom, the exercise of which caused a deprivation of the plaintiff's rights; and (2) establish an affirmative link between the policy and the alleged constitutional violation.  See *Oklahoma v. Tuttle*, 471 U.S. at 817, 823.

In the present case, Brown has failed to state a claim against the Town of Stonington pursuant to §1983.  The Amended Complaint does not allege that any municipal custom or policy resulted in the deprivation of Brown's constitutional rights.  In fact, Brown simply alleges that the Town of Stonington is liable for the actions of the defendants.  Such an allegation falls well short of the standard for liability required by the U.S. Supreme Court in *Monell*, namely that the deprivation of a constitutional right was the result of a municipal custom or policy.

Additionally, if the Court finds that the defendant officers did not violate Brown's constitutional rights as alleged, Brown cannot then be deemed to have suffered any constitutional injury.  In the absence of a constitutional injury, Brown's *Monell* claims against the Town of Stonington, and its officials, are subject to dismissal as a matter of law.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam).

Brown cannot establish the Town was deliberately indifferent; Brown "must show that the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir. 1995).  "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."  Id. In the instant matter, Brown cannot prove that the defendant Town adopted a policy of inadequate training of its police officers so as to evidence a deliberate indifference to residents or visitors to the Town of Stonington.  The Town requires all officers to adhere to the training protocol established by state standards.  All of the defendant officers completed training at the Connecticut Municipal Police Training Academy.  (Erskine Affidavit, Exhibit J; Desmond Affidavit, Exhibit K).  While at the academy, the defendant officers and Sergeant received training in, inter alia: criminal investigation, human relations, defensive tactics, and use of force.  (Erskine Affidavit, Exhibit J; Desmond Affidavit, Exhibit K).  From the year ending 1998, the defendant officers were required to complete forty hours of training in job-related subjects within a three-year period to re-certify.  (Erskine Affidavit, Exhibit J; Desmond Affidavit, Exhibit K).  At the time of the June 29, 2001 incident, the aforesaid officers had attended supplemental training courses as part of their re-certification requirements (including laws of arrest, stopping suspects, use of force), and were in full compliance with the re-certification requirements in place at that time.  (Erskine Affidavit, Exhibit J; Desmond Affidavit, Exhibit K).

There exists no genuine issue of material fact that Brown is unable to establish any evidence of deliberate indifference on the part of the Town of Stonington, Chief

Erskine or Captain Desmond.  Accordingly, the defendants are entitled to judgment as a matter of law as to Brown's Monell and failure to train claims.

**J.    BROWN'S STATE-LAW CLAIM FOR ASSAULT AND BATTERY FAILS AS A MATTER OF LAW SINCE THE AMOUNT OF FORCE USED WAS REASONABLE UNDER THE CIRCUMSTANCES PRESENTED AND JUSTIFIED UNDER CONNECTICUT LAW**

The First Count of the Amended Complaint also alleges a claim for assault and battery.  (Amended Complaint, Count One, ¶24).  However, once probable cause existed to arrest Brown for Breach of Peace, Criminal Trespass, and Interfering with an Officer, both Officers Peckham and Carr were authorized to use reasonable force to effectuate the arrest pursuant to C.G.S. §53a-22.

As indicated previously, there is no evidence to support the plaintiff's claim that he was assaulted, knocked to the ground by the officers' fists and police equipment, or thrown against the police cruiser.  Based upon the plaintiff's behavior and refusal to exit the water as instructed, it was certainly reasonable for Officer Carr to take hold of the plaintiff's arm and escort him out of the water.  Additionally, Officers Peckham and Carr both attest to the fact that the plaintiff fell as he was exiting the water, and was not knocked to the ground as alleged.  (Peckham Affidavit, Exhibit C; Carr Affidavit, Exhibit D).  Finally, the independent witness, Phillip Henry, provided a sworn statement in which he stated that the officers at no time were abusive towards Brown while effectuating his arrest.  (July 27, 2001 Henry Statement, Exhibit L).  The force utilized by the defendants in effectuating Brown's arrest, as a matter of law, was reasonable and is justified pursuant to §53a-22(b).  As such, judgment should enter as a matter of law as to the claim of assault and battery.

**K.    BROWN'S CLAIM OF FALSE IMPRISONMENT FAILS AS A MATTER OF LAW AS HE CANNOT ESTABLISH THE NECESSARY ELEMENTS OF SUCH A CLAIM**

Count One alleges false imprisonment against the defendants.  In support of this claim, the plaintiff alleges that he was "incarcerated for a period of approximately four hours."  (Amended Complaint, Count One, ¶20).  The plaintiff further alleges that he was caused "to be held in police custody although the defendants knew that the plaintiffs were local area residents, property owners and that the plaintiffs had relatives in the immediate area."  Id. at ¶18.  These bare allegations, viewed in a light most favorable to the plaintiff, are not sufficient to form a viable claim for false imprisonment.

"False imprisonment . . . is the unlawful restraint by one person of the physical liberty of another."  *Green v. Donroe*, 186 Conn. 265, 267 (1982).  False imprisonment is an intentional tort.  *See Rivera v. Double A Transportation Inc.*, 248 Conn. 21, 31 (1999).  "A person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it."  *Id.*, *quoting*, 32 Am. Jur. 2d, False Imprisonment §9.  "In the case of false imprisonment the detention must be wholly unlawful . . . " *McGann v. Allen*, 105 Conn. 177, 188 (1926) (emphasis added).

"To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly."  *Lo Sacco v. Young*, 20 Conn. App. 6, 19 (1989).  If a person consents to, or acquiesces in, a restraint imposed upon him, then that person has no viable claim for false imprisonment.  *Id.*

In the instant matter, the plaintiff's claim for false imprisonment fails as a matter of law as he was properly detained during a lawful police investigation for which probable cause existed for his detainment and subsequent arrest.  Officers Peckham and Carr reasonably believed that they had probable cause to arrest Brown for Criminal Trespass and Breach of Peace given his conduct and actions as observed by them at the scene.  As noted above, in the context of a false imprisonment claim, the detention must be "wholly unlawful."  *McGann v. Allen*, 105 Conn. 188.  "Because the law is clear that a cause of action for false imprisonment cannot be sustained where the plaintiff's [detention] results from the defendants' institution of and compliance with proper legal authority, the allegations of the plaintiff's complaint are insufficient to set up a cause of action for false imprisonment."  *Lo Sacco v. Young*, 20 Conn. App. at 21.

To the extent that Count One alleges a claim for false imprisonment under §1983, that claim fails as a matter of law as well.  "In order to make out a §1983 claim for false arrest or imprisonment, plaintiff must demonstrate that defendant intended to confine him, he was conscious of the confinement, he did not consent to the confinement, and the confinement was not otherwise privileged."  *Shain v. Ellison*, 273 F.3d 57, 67  (2d Cir. 2001).  An arrest made on probable cause is privileged, and probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  *Id.* at 68 (citations omitted; internal quotation marks omitted).

As indicated above, it was reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest Brown for Criminal Trespass and Breach of Peace based upon their own personal observations of the plaintiff, the plaintiff's conduct, and

the observations reported by witness Phillip Henry. Finally, as indicated above, Brown

cannot prevail on his false imprisonment claim against the individual defendant officers,

as he pled guilty to the charge of Breach of Peace during his criminal trial. (Brown

Conviction Record, Exhibit S). "It is clear that if the plaintiff has been convicted of either

of the crimes with which he was charged, or of any lessor included offenses, this would

be conclusive proof of probable cause which would defeat his claim of [false arrest or]

false imprisonment. *See, Pouncey v. Ryan,* 396 F.Supp. 126, 127 (D.Conn. 1975)."

*Konon v. Fornal*, 612 F.Supp. 68, 71 (D.Conn. 1985).

The defendants are, therefore, entitled to judgment as a matter of law as Brown

is unable to prove the elements essential to a cause of action based on false

imprisonment.

### L.    BROWN'S CLAIMS OF ABUSE OF PROCESS FAILS AS A MATTER OF LAW AS HE IS UNABLE TO SATISFY THE ELEMENTS OF SUCH A CLAIM

The Amended Complaint alleges a claim based on an abuse of process.

Specifically, Brown alleges that the police defendants maliciously and willfully "prepared

a false report which they knew and intended would be forwarded to a prosecuting

attorney and relied upon by the prosecuting attorney in deciding whether to prosecute

the plaintiffs and, if so, the manner in which the plaintiffs' prosecution should be

handled." (Amended Complaint, Count 1, ¶19).

"[A] malicious abuse of process claim lies against a defendant who (1) employs

regularly issued legal process to compel performance or forbearance of some act

(2) with intent to do harm without excuse or justification, and (3) in order to obtain a

collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*,

41 F.3d 73,80 (2d Cir. 1994).   In the present case, Brown is unable to satisfy the intent element of an abuse of process claim.  A successful abuse of process claim requires that the plaintiff prove that the defendants intended to do harm to the plaintiffs without excuse or justification.  *See Cook v. Sheldon,* 41 F.3d 80.  Here, Brown cannot produce any evidence to support his allegations that the defendant officers acted "maliciously and willfully."

As indicated above, Officers Peckham and Carr reasonably believed that they had probable cause to arrest Brown based upon witness Henry's statement, and their personal observations at the scene.  Brown is unable to proffer any evidence which supports his contention that he was subjected to an abuse of process as a result of his arrest, the charges against him or that the defendants prepared a false police report.  Rather, Brown was charged with those offenses which were observed to have been committed in the presence of the officers, and as relayed based upon the speedy and reasonably trustworthy statements of the witness at the scene.  Moreover, Brown pled guilty in the criminal action against him.

Therefore, no issue of material fact exists to dispute that Brown was not subjected to an abuse of process in relation to the charges lawfully levied against him and his arrest on those charges.  Brown cannot offer any evidence to support his allegations that he was subjected to an abuse of process or that the defendants prepared false police reports.  Accordingly, the defendants are entitled to judgment as a matter of law as to Brown's abuse of process claim.

**M.    BROWN'S CLAIM OF MALICIOUS PROSECUTION FAILS AS A MATTER OF LAW AS HE IS UNABLE TO SATISFY THE ELEMENTS OF SUCH A CLAIM**

In Count One of the Amended Complaint, Brown attempts to set forth a claim for malicious prosecution.  No issue of material fact exists to dispute that Brown has not properly pled a malicious prosecution claim, nor is he able to satisfy the required elements of such a claim.

"In order to prevail on a §1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law."  *Fulton v. Robinson*, 286 F.3d 188, 195 (2d Cir. 2002) (citations omitted).  In Connecticut, an "action of malicious prosecution lies where a civil or criminal action has been instituted with malice and without probable cause, and has terminated unsuccessfully.  The plaintiff must allege and prove that the original action … was instituted without probable cause, with malice, and that it terminated in his favor."  *QSP Inc. v. The Aetna Casualty & Surety Co.*, 256 Conn. 343, n.16 (2001), *quoting, Schaefer v. O.K. Tool Co., Inc.,* 110 Conn. 528, 532 (1930).

A review of the Amended Complaint in this case reveals that Brown has failed to allege that the criminal offenses he was charged with resulted in a favorable disposition to him, *i.e.,* that the charges "terminated in his favor."  Brown does allege a lack of probable cause and malice, as required for a malicious prosecution claim, however, it cannot be disputed that he has failed to allege that the criminal charges terminated in his favor.  (Amended Complaint, Count 1, ¶19).  Therefore, Brown's claim for malicious prosecution must fail as a matter of law as he has failed to allege all of the required elements for such a cause of action.

In fact, Brown cannot allege that the proceedings terminated in his favor as he pled guilty at the criminal proceedings against him. (Brown Conviction Record, Exhibit S). In order to sustain a claim for malicious prosecution, the plaintiff must demonstrate, among other things, that the prosecution terminated in his favor. *See Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir. 1997). "A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." *Roesch v. Otarola*, 980 F.2d 850 ¶10 (2d Cir. 1992).

Additionally, the plaintiff's claim of malicious prosecution fails as a matter of law as probable cause existed for his arrest. In Connecticut, a police officer can make a lawful warrantless arrest for a misdemeanor "only if the arresting police officer had probable cause to believe that the person was committing or had committed a criminal offense in the officer's presence." *Warren v. Dwyer*, 906 F.2d 70, ¶14, (2d Cir. 1990), *quoting State v. Elliot*, 153 Conn. 147, 152-53 (1965).

As is more particularly set forth above, it was objectively reasonable for the defendant officers to believe that probable cause existed for Brown's arrest based upon witness Henry's statement and their personal observations at the scene. If the Court determines that arguable probable cause existed for Brown's arrest in this matter, then Brown's claim for malicious prosecution must fail as a matter of law.

### N.    BROWN HAS FAILED TO ESTABLISH THE NECESSARY ELEMENTS OF A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN COUNTS ONE AND TWO.

The plaintiff alleges intentional infliction of emotional distress against the defendant officers in the First and Second Counts. (Amended Complaint, Count One,

¶24; Count Two, ¶¶25-27).  The plaintiff has failed to offer any specific factual

allegations to support a claim that either Officer Peckham or Officer Carr acted

intentionally to inflict emotional distress, and absent any such showing, this claim must

also fail.

In order to prevail on a cause of action for intentional infliction of emotional

distress, the plaintiff must establish four elements:  "(1) that the actor intended to inflict

emotional distress; or that he knew or should have known that the emotional distress

was a likely result of his conduct; (2) that the conduct was extreme and outrageous;

(3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the

emotional distress sustained by the plaintiff was severe."  *Petyan v. Ellis*, 200 Conn.

243, 253 (1986).  "Liability has been found only where the conduct has been so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

society."  *Whelan v. Whelan*, 41 Conn. Supp. 519, 523 (1991), *quoting*, 1 Restatement

(Second) of Torts §46, p.73, comment (d).

The conduct must be "especially calculated to cause, and does cause, mental

distress of a very serious kind."  *DeLaurentis v. New Haven*, 220 Conn. 225, 266

(1991); W. Prosser and W. Keeton, Torts, §12, p.64 (5th Ed. 1984).  Whether the

defendants' actions rise to the level of extreme and outrageous conduct is a question of

law for the Court, and only where reasonable minds can differ does it become a matter

for the jury.  *See Mellaly v. Eastman Kodak Company*, 42 Conn. Supp. 17, 18 (1991).

To be considered "extreme and outrageous," the conduct in question must be

atrocious, utterly intolerable, and go beyond all possible bounds of human decency.

*See Whelan v. Whelan*, 41 Conn. Supp. 523.  For example, extreme and outrageous conduct was found to exist in the following cases:  *Mellaly v. Eastman Kodak Co.*, 42 Conn. Supp. 20-21 (taunting and harassing plaintiff about his alcoholism despite knowledge that he was a recovering alcoholic); *Whelan v. Whelan*, 41 Conn. Supp. 519 (false statement to one's spouse that one has AIDS); *Talit v. Peterson*, 44 Conn. Supp. 490 (1997) (termination of employment in retaliation for filing grievance).

In the instant matter, the conduct of Officers Peckham and Carr clearly do not rise to the level of conduct which any reasonable person could find "extreme and outrageous."  As indicated above, it was objectively reasonable for Officers Peckham and Carr to believe that probable cause existed to arrest Brown on the charges of Breach of Peace, Criminal Trespass, and Interfering with an Officer.  The subject dock had a clearly posted sign which explicitly prohibited scuba diving or swimming.  (See Peckham Affidavit, Exhibit C; Carr Affidavit, Exhibit D).  Officers Peckham and Carr both observed Brown in the water.  (See Peckham Affidavit, Exhibit C; Carr Affidavit, Exhibit D).  Brown refused to exit the water after being repeatedly instructed to do so and became belligerent.  (See Brown Deposition, Exhibit G, at pp.35-36, 40; Peckham affidavit, Exhibit C; Carr Affidavit, Exhibit D).  In addition, Brown proceeded to empty lobsters out of the bag he was carrying despite being instructed not to do so.  (Police Report re Edward Brown, Exhibit A; Peckham Affidavit, Exhibit C; Brown Deposition, Exhibit G, at p.38).  Finally, the defendant officers had the timely and reasonably trustworthy statement of Phillip Henry regarding Brown's belligerent conduct at the scene.  (See Henry Statement, Exhibit E).

Based upon their observations and Henry's statements, Officers Peckham and Carr had probable cause to arrest Brown for Breach of Peace, Criminal Trespass and

Interfering with an Officer.  Moreover, the officers utilized reasonable force in effectuating Brown's arrest.  The plaintiff is, therefore, unable to sustain his burden of proof that the defendant officers' conduct was extreme and outrageous, or that they acted with the intent to cause him emotional distress.  Accordingly, the defendants are entitled to judgment as a matter of law as to Counts One and Two of the Amended Complaint alleging the intentional infliction of emotional distress.

> ### O.    BROWN'S CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS DIRECTED TO THE TOWN OF STONINGTON ARE BARRED BY THE DOCTRINE OF GOVERNMENTAL IMMUNITY

In the First and Second Counts of his Amended Complaint, Brown alleges claims of intentional infliction of emotional distress directed to the Town of Stonington.  Said claims are expressly barred by the doctrine of governmental immunity. Connecticut General Statutes, §52-557n expressly immunizes political subdivisions of the state from liability for damages caused by the intentional acts of its employees.  Section 52-557n(a)(2) provides that: " [A] political subdivision of the State shall not be liable for damages to person or property caused by: (A) acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or willful misconduct." Pursuant to §52-557n, the Town of Stonington is entitled to summary judgment with regard to the plaintiff's claims of intentional infliction of emotional distress as alleged in Counts One and Two of the Amended Complaint.

> ### P.    BROWN'S CLAIMS UNDER THE CONNECTICUT CONSTITUTION FAIL AS A MATTER OF LAW

In the First Count of the Amended Complaint, the plaintiff brings a claim against the Town of Stonington and the individually named defendants pursuant to article first of the Connecticut Constitution.  The plaintiff alleges a deprivation of rights secured by

§§1, 4, 7, 8, 9 ,10, 11 and 20 of article first. The Connecticut Supreme Court has

consistently looked to *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971) and its federal progeny as a guide in determining

whether to create a Bivens action for an alleged state constitutional violation.  *Kelley*

*Property Development, Inc. v. Lebanon*, 226 Conn. 314, 334-38 (1993); *ATC*

*Partnership v. Windham*, 251 Conn. 597, 613-14 (1999).   Thus far, the Court has been

reluctant to create private causes of action for money damages under the Connecticut

Constitution.  *See generally, ATC Partnership v. Town of Windham,* 251 Conn. 597

(1999) (declining to recognize a cause of action for alleged violation of substantive due

process rights under article first §8); *Kelly Property Development, Inc. v. Lebanon*, 226

Conn. 314 (1993) (same).  In *Kelley Property*, the Court referenced the *Bivens* line of

Supreme Court cases and noted that, as a general rule, a plaintiff should not be able to

maintain a *Bivens* action unless he can establish that he would otherwise be without

any remedy.  *See Id.* at 337-38, 339.

    When our Supreme Court found a case where the facts and Constitutional

violations claimed fulfilled the *Bivens* requirements, and the Court created a common-

law cause of action. *Binette v. Sabo*, 244 Conn. 23(1998). However, our Supreme Court

has been constant in stating that in deciding whether a *Bivens* action ought to be

permitted for a given state constitutional violation, the *Bivens* case and its federal

progeny would guide Connecticut courts. *Kelley Property Development, Inc. v. Lebanon,*

*supra*, 338; *ATC Partnership v. Windham*, 251 Conn. 597, 613 (1999).

        In 1994, the United States Supreme Court held that Bivens actions apply
        only to individuals and not governmental agencies. *FDIC v. Meyer*, 510
        U.S. 471, 486 (1994). Recently, that Court has reiterated and expanded
        the restriction holding that Bivens actions are available only against

individuals and not private corporate entities engaged in governmental business. *Correctional Services Corp. v. Malesko*, 534 U.S. 61(2001). *Aselton*, (Exhibit T).

Based on the above, the plaintiff's claim of violations of article first, §§1, 4, 7, 8, 9, 10, 11 and 20 of the Connecticut Constitution fail as a matter of law. Additionally, as indicated above, the conduct of the defendants was lawful as they had probable cause to arrest the plaintiff on the charges levied against him. Finally, the plaintiff has adequate, alternative remedies at law. The defendants are, therefore, entitled to judgment as a matter of law as to the First Count of the Amended Complaint.

### Q.  THE PLAINTIFF'S CLAIM FOR INDEMNIFICATION AGAINST THE TOWN OF STONINGTON PURSUANT TO CONN. GEN. STAT. §7-465 FAILS AS A MATTER OF LAW

In the First Count of his Amended Complaint, the plaintiff merely alleges that the Town of Stonington is liable for the actions of the individually named defendants pursuant to the provisions of Conn. Gen. Stat. §7-465. (Amended Complaint, Count One at ¶4). "[I]n a suit under §7-465, any municipal liability which may attach is predicated on prior findings of individual negligence on the part of the employee and the municipality's employment relationship with that individual." *Wu v. Town of Fairfield*, 204 Conn. 435, 438 (1987).

Accordingly, if the Court finds that it was objectively reasonable for the defendants to believe that probable cause existed for the plaintiff's arrest, and further that the defendants did not violate the plaintiff's constitutional rights in effectuating his arrest, the plaintiff's claim for indemnification against the Town of Stonington must fail as a matter of law. The Town of Stonington is, therefore, entitled to judgment as a

matter of law as to the plaintiff's claim for indemnification pursuant to Conn. Gen. Stat. §7-465.

>    **R.    HAVING DISMISSED ALL FEDERAL CLAIMS, IN THE ALTERNATIVE, THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE STATE LAW CLAIMS.**

In addition and the alternative, this Court, having decided that the plaintiff has failed to state valid federal claims or that defendants are protected by qualified immunity, should decline to exercise jurisdiction over the pendant state law claims, including the state constitutional claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well."); *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (same). Therefore, the state law claims in the complaint should be dismissed.

## III.    <u>CONCLUSION.</u>

For the foregoing reasons, the defendants respectfully request that summary judgment enter in their favor as to Brown's Amended Complaint dated October 29, 2002.

>    THE DEFENDANTS,
>    TOWN OF STONINGTON, DAVID ERSKINE, JERRY DESMOND, RAYMOND CURIOSO, JOHN CARR and MICHAEL PECKHAM
>
>    /s/ John J. Radshaw, III
>    John J. Radshaw, III, ct19882
>    Howd & Ludorf, LLC
>    65 Wethersfield Avenue
>    Hartford, CT  06114-1190
>    (860) 249-1361
>    (860) 249-7665 (Fax)

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to all pro se parties and counsel of record this 25th day of March 2005 as follows:

Edward Brown
4 Marlene Drive
Ledyard, CT 06339

/s/ John J. Radshaw, III
John J. Radshaw, III