UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD BROWN, | : | |
|     Plaintiff, | : | 3:01-CV-02374 (CFD) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF STONINGTON, | : | |
| ET AL, | : | |
|     Defendants | : | July 16, 2008 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff brought several claims against the defendants regarding an incident that occurred at the Stonington Town Docks/Beach, on June 29, 2001. Plaintiff herein withdraws all claims except those related to: (1) the unreasonable and excessive force used against Mr. Brown prior to, during, and after his arrest; and (2) the first amendment claim in relation to Mr. Brown's complaint against Officers Peckham and Carr, lodged with the Stonington Police Department.

This case is not extremely complicated, nor, we suspect, is it the most severe use of excessive force ever presented for the Court's review. Nonetheless, the case presents a factual dispute for which summary judgment is inapplicable. Additionally, given the circumstances of the case as per the testimony of Mr. Brown, which must be taken as true given that the defendants' filed a motion for summary judgment, the actions of the officers were not reasonable, nor would any officer agree that they were. Thus, the defense of qualified immunity is also inapplicable.

1

Finally, although this case may not be one of a brutal, despicable and heinous beating of an arrestee at the hands of police officers, it does, nonetheless, present a factual issue; specifically an assault perpetrated against Mr. Brown, which greatly affected his personal and professional life.

## II.    FACTUAL BACKGROUND

At approximately 8:45 p.m., on the evening of June 29, 2001, Ed Brown went diving for lobsters off Stonington Beach, in the public access area. (Plaintiff's deposition, pages 19, 22, excerpts attached as Exhibit A; hereinafter referred to as "Exhibit A, p___). Mr. Brown possessed a valid license to dive for lobsters. (Attached as Exhibit B) Mr. Brown was accompanied by Jeffery Menard. Mr. Menard accompanied Mr. Brown so that Mr. Brown was not alone, in case something happened. (Exhibit A, p32) Prior to the dive, Mr. Brown and Mr. Menard were at Stonington Point watching boats. (Exhibit A, p27)

Mr. Brown donned his wetsuit and went to check out the water conditions; after checking his equipment, Mr. Brown began the dive. (Exhibit A, pp30-33) Mr. Brown was in the water approximately 45 minutes. (Exhibit A, p34) He went down approximately 35 feet. Id.

When Mr. Brown surfaced, someone shined a bright light directly in his eyes. (Exhibit A, p35) Mr. Brown did not know who was shining a light in his eyes. He swore, "Get the f'n light out of my eyes." Id. Mr. Brown had water in his ears, and was experiencing a bit of vertigo. He again requested that the person get the light out of his eyes. Id. According to the affidavit of Mr.

Phillip Henry, both he and one of the defendant's shined their lights on Mr. Brown as he surfaced.[1] (Defense Exhibit L)

The person on the wall then told Mr. Brown that he was under arrest, and instructed Mr. Brown to get out of the water. (Exhibit A, p36) Mr. Brown asked what was going on, and noticed at that time that the person on the rocks was a police officer. (Exhibit A p37) Mr. Brown replied that he had a valid license to dive. Id. Mr. Brown then let the lobster go. He let the lobsters free because if he was under arrest, the lobsters would be wasted. (Exhibit A, p38) That is, they would die and be inedible. Id. The office was screaming and yelling, and appeared to Mr. Brown that the officer was going to dive into the water. (Exhibit A, p39) Mr. Brown repeated that he had a valid permit to dive for lobsters. Id. Mr. Brown released the lobsters and proceeded to shore. Id.

Mr. Brown went to shore. He stopped a short distance from shore so as to remove some of his equipment. (Exhibit A, p40) He took off his fins so that he could walk on land. He removed his light, mask, and put the equipment in his dive bag. Id. The tank remained on his back. Mr. Brown then began to walk ashore.

According to the affidavit of Defendant Carr, he "took [Mr. Brown] by the arm and escorted him off the sandy area of the dock." (See Defense Exhibit D, ¶24) According to Mr. Brown, when he exited the water Officer Carr grabbed Mr. Brown and started shaking him. (Exhibit A p41) Mr. Brown was then shoved into the rocks to his left. Id. Mr. Brown hit the rocks and fell to the floor. Prior to this force, the officer was not instructing Mr. Brown as to how to behave as he walked ashore. Id.

---

[1] Phillip Henry was at the dock checking his boat. He noticed Mr. Menard, and learned that Mr. Brown was diving for lobsters. Mr. Henry's wife called the police. (See Defense Exhibit L)

After being shoved into the rocks with the tank on his back, Mr. Brown arose and continued to walk to the area of where his vehicle was parked. (Exhibit A p42) Mr. Brown set his equipment down on the grass. The officers were continuing to scream and yell at Mr. Brown. They were very loud and angry. (Exhibit A p43) The defendants proceeded to grab Mr. Brown by his right arm, and shake him. (Exhibit A p45) The other officer got up into Mr. Brown's face, making erratic movements and screaming very loudly at Mr. Brown. The officer was, as per Mr. Brown, provoking a fight. Id. Prior to these assaults, the officers had not instructed Mr. Brown to put his hands up, or behave in a certain way other than to exit the water. (Exhibit A p46)[2]

Mr. Brown indicated that he had a valid license to dive, and the officers inspected the papers given to them by Mr. Brown. (Exhibit A p47) The defendants then became very loud and aggressive, appearing extremely upset at Mr. Brown. (Exhibit A p49) The officer proceeded to grab Mr. Brown and throw him against the police cruiser. Id. Mr. Brown informed the officers that there was a diver's knife strapped to his leg, in case of a diving emergency. The officers removed the diver's knife. (Exhibit A p50) A short time after, Mr. Brown heard one officer inform another officer that Defendant Peckham had a beef with Mr. Brown. (Exhibit A, p52)

The defendants proceed to hit Mr. Brown with a flashlight. Id. He was grabbed by the arms and shaken with extreme force. The officer proceeded to grab Mr. Brown's wrists and force his arms way up behind his back and put the handcuffs on him very tightly. Mr. Brown informed the officers that the cuffs were too tight, but they did not relieve the pressure of the cuffs. Id. Mr. Brown's hand s began to turn purple. He was then again hit with the flashlight and punched.

---

[2] Pertinent to the factual dispute is the recollection of Mr. Henry regarding what occurred as Mr. Brown exited the water. According to Mr. Henry, the officer cuffed Mr. Brown on the beach, and then escorted him to the shore. Neither Mr. Brown, nor the defendants confirm or attest to this fact. Indeed, Mr. Brown was not cuffed until he was by his truck, after he had left the beach. Thus, this dispute brings into question the recollection of Mr. Henry regarding the incidents that occurred on the night in question, in addition to creating a factual dispute. (See Defense Exhibit L)

(Exhibit A p53) After being struck with the flashlight, the officer then shoved the flashlight into the buttocks area of Mr. Brown. Id. Mr. Brown was bleeding. Id.

Mr. Brown again stated that the cuffs were too tight, but obtained no relief from the pressure. The defendants proceeded to have Mr. Brown's vehicle towed, despite the fact that it was legally parked in a public parking lot. (Exhibit A p54) The wrecker showed up and towed his vehicle. (Exhibit A p55) Mr. Brown again requested that the cuffs be loosened. They were not. (Exhibit A p56)

At the police station, the cuffs were finally loosened. Mr. Brown's hands were completely purple, tingling and itchy. He was also bleeding. (Exhibit A p57) Mr. Brown was eventually released, and he called his mother to pick him up at the station at around 3:00 a.m. (Exhibit A p59) Mr. Brown was wearing only a pair of shorts, and no shirt. The officers had confiscated the wetsuit, and Mr. Brown only had a pair of shorts and was not given a shirt to wear. Furthermore, Mr. Brown's pleas for medical attention went unheeded. (Exhibit A p89)

Not only did the officer use unreasonable force against Mr. Brown, but they intentionally and maliciously placed the handcuffs too tightly, and the defendants engaged in lewd conduct with the flashlight. (Exhibit A p64)

On July 19, 2001, Mr. Brown filed a formal written complaint against the officer with the Stonington Police Department. (See defense Exhibit H) On or about July 26, 2001, Captain Jerry Desmond went to Mr. Brown's house regarding the complaint. (Exhibit A p70) Captain Desmond intimidated Mr. Brown by projecting violent behavior. (Exhibit A p71) Officer Desmond used Mr. Brown's phone, and proceeded to slam it down, breaking the phone. Id. Mr. Brown had to have the phone repaired. In large part because of the intimidation, Mr. Brown withdrew his claim against the officers. (See Defense Exhibit I)

Interestingly, the affidavit of Captain Desmond does not dispute the fact that Mr. Brown alleges Captain Desmond broke the phone or intimidated Mr. Brown while investigating the civilian complaint. (See Defense Exhibit K)

Mr. Brown suffered physical and emotional damages as a result of the defendants' action on the dates in question. Mr. Brown loves to dive, and the defendants made him fear doing something he loves to do. (Exhibit A pp73-74) He was robbed of the enjoyment of diving. (Exhibit A p87) Additionally, Mr. Brown saw a psychiatrist for the mental anguish and emotional injuries he suffered at the hands of the defendants'. (Exhibit A p78) Mr. Brown wanted to treat with a doctor regarding his physical injuries, but did not have health insurance to do so. (Exhibit A p75) Mr. Brown's hands were sore, his wrists tingled, and he was unable to drive his vehicle.(Exhibit A p76) Mr. Brown was prescribed clonazepem and paxil as a result of this incident. Id. Mr. Brown was, and remains, nervous and fearful of the police. (Exhibit A p87) He suffers from confusion and has difficulty concentrating. (Exhibit A pp76-77) Mr. Brown can no longer practice as a machinist as his ability to concentrate has been compromised. (Exhibit A p84)

### III.    THE DEFENDANTS

In his amended complaint, Mr. Brown named several individuals, as well as the Town of Stonington.

Officers Peckham and Carr, were, admittedly, at the scene of the incident on June 29, 2001. They were involved in the seizure and assault on Mr. Brown. They arrested Mr. Brown. As such, they are rightly named defendants.

Mr. Brown testified that Officer Cursio was also at the scene, and engaged Mr. Brown and the other officers who were abusing Mr. Brown. (Exhibit A, p51) Moreover, Mr. Brown testified that he heard an unidentified officer tell Officer Cursio that Officer Peckham had a beef with Mr. Brown. (Exhibit A p52) Officer Peckham's failure to intervene in the assault upon Mr. Brown is actionable.

Although Officer Cursio submitted an affidavit that he was not on duty at the time of the incident, such affirmation does not preclude him from being at the scene and participating, vel non, in the events that occurred that day, prior to the arrest of Mr. Brown. Furthermore, although Officer Cursio affirmed that he was not present at the time Mr. Brown was arrested, Mr. Brown's testimony creates a material factual conflict on the issue.

Additionally, although Officer Cursio affirmed that he did not participate in the arrest, nor was he present at the time of the arrest, of Mr. Brown, that, in and of itself, is not enough to relieve him from being a defendant. Mr. Brown's arrest time is recorded as 11:08 p.m. (See Defense Exhibit B) The events in question occurred sometime around 10:00 p.m. The distinction is one of semantics. It is, simply, a technicality upon which Officer Cursio seeks to be relieved from this case. That is, to say Officer Cursio was not present at the time of the arrest, at 11:08 p.m., does not preclude his being at the scene of the assault one hour prior to the recorded arrest time. The affidavit is insufficient, and does not preclude Officer Cursio from being a defendant in this action.

Captain Desmond was named as a defendant regarding the First Amendment claim. He is a rightful defendant given the events as described by Mr. Brown. Moreover, according to Captain Desmond's affidavit, he was assigned to investigate Mr. Brown's complaint, and nowhere in the affidavit does Captain Desmond dispute the deposition testimony of Mr. Brown

regarding the incident that occurred at his residence in relation to the investigation of his complaint.

David Erskine is the Chief of Police, and as such, assigned Captain Desmond to investigate the complaint of Mr. Brown, is the commanding officer of the Stonington Police Department, and oversees his officers.

The Town of Stonington is named as a defendant in this action. It does not appear from the evidence that there is a policy or practice of the Town that is implicated in this case, and the Town should therefore be dismissed from this action.

## IV.  SUMMARY JUDGMENT STANDARD

A summary judgment motion "may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." Brown v. Pannozzo, 2007 WL 2874795 *1 (D. Conn. 2007). "An issue is 'genuine…if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. at *2 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In deciding whether a case presents any triable issues of fact the court "may not make credibility determinations or weight the evidence, and [the court] must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." Id. (citations omitted). "Summary judgment is not appropriate where a review of the record reveals sufficient evidence for a rational trier of fact to find in the plaintiff's favor." Dillon v. Moreno, 497 F.3d 247, 251

(2d Cir. 2007)(citations omitted). The burden of showing no genuine factual dispute rests with the moving party. Harp v. Destefano, 2007 WL 2869831 *3 (D. Conn. 2007).

### V.     EXCESSIVE FORCE IS CONTRARY TO THE FOURTH AMENDMENT

The second circuit has stated: "It is well established that 'use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.'" Stephenson v. Doe, 332 F3d 68, 77 (2003)(quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)). That is to say, given the "specific context of the case, [the] relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (quotations and citations omitted).

### VI.    THE DEFENDANTS' INFLICTED A GRATITOUS BEATING UPON MR. BROWN

In this case, there is a factual dispute regarding what occurred on the beach in Stonington on June 29, 2001. Moreover, given Mr. Brown's version of the events, which the court must accord on defendants' motion for summary judgment, the specific context of the case makes it clear that a reasonable officer would not assault Mr. Brown as the defendants did.

According to the defendants', Mr. Brown swore at them, and let the lobsters free despite their warning. Mr. Brown denies that the defendants ordered him to let the lobsters free. Furthermore, even if the officers did order Mr. Brown to shore with the lobsters, or ordered Mr. Brown to not let the lobsters free, their actions that followed the command were disproportionate to the alleged disobeyance of the command.

Mr. Brown was diving. He had been underwater for approximately 45 minutes. When he surfaced, he had a light directly in his eyes. This in itself is a dangerous action as it could further disorient Mr. Brown as to his surroundings and to exactly what was happening. Furthermore, Mr. Brown testified that the defendants did not identify themselves as police officers until after the light was taken out of his eyes. Thus, Mr. Brown's swearing to the effect of getting the light out of his eyes was proportionate to what was occurring. After Mr. Brown learned that they were police officers, he obeyed their commands.

When Mr. Brown went ashore he was attacked. He was shoved, pushed, kicked, and thrown into the rocks. Mr. Brown was carrying an oxygen tank on his back that could have exploded had it connected with the rocks. Although the officers may have been upset that Mr. Brown swore at them, their actions following were not proportionate to the situation they faced.

Furthermore, when Mr. Brown took off his equipment, and after he retrieved his license to dive for lobsters, the officers continued to assault him by pushing, shoving and kicking him. Mr. Brown did not engage in any conduct of resistance at that point. He was simply trying to explain to the officers that he was legally diving for lobsters. The defendant's response was to use excessive force upon him. Moreover, when he was taken into custody, the officer intentionally placed the cuffs on him too tightly, thereby causing Mr. Brown's hands to turn purple, and causing him to lose feeling in his hands.

The defendants seek to state that there are undisputed facts relevant to the objective reasonableness of their actions. However, the facts are not undisputed, nor were their action reasonable.

There was simply no reason for Mr. Brown to be shoved and pushed into the rocks upon his leaving the water. Especially given that the oxygen tank he carried could have exploded had

10

it connected with the rocks. Furthermore, Mr. Brown, although disputing the allegation that he was poaching lobsters, and informing the officers that he was not illegally diving, did not engage in any conduct that required the officers to subdue him or assault him. Instead, the defendants' kicks and punches, and their hitting him with the flashlight, were gratuitous actions on the part of the officers meant to injury, intimidate, and hurt Mr. Brown.

Although the affidavit of Mr. Henry affirms that he did not see the police engage in any assaultive behavior, that is, of course, a factual dispute that a jury must decide. Furthermore, although not directly pertinent to the events that occurred between the police and Mr. Brown on the date in question, there is a conflict between the versions of the events as told by Mr. Henry and Mr. Menard.

Prior to Mr. Brown surfacing, Mr. Henry, confronted Mr. Jeffery Menard. The conflict between the testimony of Mr. Menard and the affidavit of NAME Henry, is telling. Mr. Menard testified that he was confronted by Mr. Henry. When Mr. Menard attempted to explain what Mr. Brown was doing, Mr. Henry pulled a knife on Mr. Menard. (See Defense Exhibit F) Mr. Henry, of course, does not admit pulling a knife on Mr. Menard. (See Defense Exhibit L) Mr. Henry's wife was instructed by Mr. Henry to call the police. <u>Id.</u>

These disputes, and the unreasonableness of the officers' actions, given that Mr. Brown was not disobedient once he learned that the person on the rocks was a police officer, not only preclude summary judgment on the legal issue of excessive force, but also preclude judgment on the doctrine of qualified immunity.

## VII.   STANDARD FOR THE DEFENSE OF QUALIFIED IMMUNITY

For a defendant police officer in an excessive force claim to be shielded by qualified immunity, the court must consider whether the right in question is clearly established, and whether the application of the general right to the facts of the particular case is something a reasonable officer could be expected to anticipate. Walczyk v. Rio, 496 F.3d 139 (2d Cir. 2007). In other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he faced. Saucier v. Katz, 533 U.S. 194, 202 (2001)(whether it would be clear to a reasonable officer that his or her conduct was unlawful in the situation he or she confronted)

Furthermore, "[w]here specific intent of a defendant is an element of plaintiff's claim under clearly established law, and plaintiff has adduced sufficient evidence of that intent to defeat summary judgment, summary judgment on qualified immunity grounds in inappropriate." Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003). See also, Arlio v. Lively, 474 F.3d 46, 51 (2d Cir. 2007)(as facts underlying qualified immunity defense remained in dispute, the district court properly allowed the case to proceed to trial).

## VIII.  THE DEFENDANTS ARE NOT SHIELDED BY QUALIFIED IMMUNITY BECAUSE OF THE FACTUAL DISPUTE BETWEEN THE PARTIES AND THE FACT THAT NO REASONABLE OFFICER COULD AGREE THAT GIVEN MR. BROWN'S VERSION OF THE EVENTS THE DEFENDANTS' ACTIONS WERE REASONABLE

The right to be free from excessive force is clearly established. Here, according to the officers, Mr. Brown disobeyed the command to not let the lobsters free. Mr. Brown has disputed that fact. Nonetheless, even if that is true, a point which plaintiff in no way concedes except for

argument purposes, the actions of the defendants that followed were disproportionate to the situation between them and Mr. Brown.

Mr. Brown came ashore as instructed. He was not resistant as he came ashore. However, as soon as he was ashore the defendants began their assault. The officers shoved Mr. Brown, pushed him into the rocks, punched him, kicked him, and later poked a flashlight into Mr. Brown's buttocks. The defendants also hit Mr. Brown with the flashlight. The defendants' actions were not reasonable given that Mr. Brown was compliant. Furthermore, although Mr. Brown was attempting to prove that he was lawfully diving for lobsters, that in and of itself is not an act of resistance that warranted the beating Mr. Brown received at the hands of the defendants.

Additionally, the cuffs were placed extremely tight, causing injury to Mr. Brown. Mr. Brown complained of the tightness. The pressure was not relieved until Mr. Brown was at the police station.

Clearly, these actions, given the plaintiff's version of events, were not reasonable under the circumstances, thereby precluding summary judgment on the issue of qualified immunity.

### IX. MR. BROWN'S FIRST AMENDMENT RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES WAS VIOLATED WHEN CAPTAIN DESMOND WENT TO MR. BROWN'S HOUSE, EXHIBITED VIOLENT AND INTIMIDATING BEHAVIOR, AND SLAMMED MR. BROWN'S TELEPHONE, THEREBY BREAKING IT

The First Amendment to the United States Constitution protects the right of the individual to petition the government for redress of grievances. Indeed, "[E]xpression on public issues 'has always rested on the highest rung of the hierarchy of First Amendment values' ".

NAACP v. Claiborne Hardware Co., 458 U.S. 886, 913 (1982)(quoting Carey v. Brown, 447 U.S. 455, 467 (1980)).

Here, Mr. Brown filed a complaint with the Stonington Police Department regarding his treatment on the night in question. Captain Desmond, according to his affidavit, was assigned to investigate that complaint. Important, however, is the fact that Captain Desmond's affidavit does not dispute any of the facts as testified to by Mr. Brown. Thus, the undisputed facts show the following:

When Captain Desmond went to Mr. Brown's residence Captain Desmond was intimidating and ultimately broke Mr. Brown's telephone. This behavior scared Mr. Brown and caused him to withdraw his complaint. Indeed, as Mr. Brown wrote: ""I conclude based on your actions to date that you are either incapable or unwilling to fairly, impartially and professionally conduct an investigation into the allegations I made in my complaint." (See Defense Exhibit I.)

Mr. Brown testified at his deposition that Captain Desmond broke the phone, and intimidated Mr. Brown. Indeed, it was this behavior that caused Mr. Brown to withdraw his complaint.

Given the factual dispute, summary judgment is unwarranted on the first amendment claim.

## X.   CONCLUSION

This case presents for the Court two versions of events that occurred on June 29, 2001. As such, the factual dispute precludes summary judgment. Moreover, given Mr. Brown's version of the events on the date in question, qualified immunity is inapplicable.

Therefore, it is RESPECTFULLY REQUESTED, that the defendant motion for summary judgment be denied.

                         RESPECTFULLY SUBMITTED,
                         THE PLAINTIFF,
                         EDWARD BROWN,

BY:   /s/   John F. Geida   /s/
        John F. Geida, Esq.
        Fed. Bar No. ct27468
        The Law Offices of Norman A. Pattis, LLC
        649 Amity Road, PO Box 280
        Bethany, CT 06524
        Tel. 203-393-3017
        Fax. 203-393-9745

## CERTIFICATION

I hereby certify that on July 16, 2008, a copy of the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                         /s/ John F. Geida /s/
                         John F. Geida
                         Fed. Bar No. ct27468
                         Law Offices of Norman A. Pattis LLC
                         649 Amity Road, PO Box 280
                         Bethany, CT 06524
                         Tel: (203) 393-3017
                         Fax: (203) 393-9745