UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD BROWN, | : | |
|     Plaintiff | : | Civil Action No. 3:01CV2374(CFD) |
| | : | |
| v. | : | |
| | : | |
| THE TOWN OF STONINGTON, ET AL, | : | |
|     Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Edward Brown brought this action under 42 U.S.C. § 1983 against Stonington Police Chief David Eskrine, Captain Jerry Desmond, Lieutenant Raymond Curioso, and Officers John Carr and Michael Peckham (collectively the "Officers"). Brown sues the Officers in both their individual and official capacities. Bown alleges violations of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.[1]

---

[1] In his memorandum in opposition to the motion for summary judgment, Brown withdrew his remaining claims. Brown also withdrew his claims against the Town of Stonington, and did not oppose the motion for summary judgment with regards to Officers Mario Rubello, Todd Olson, Louis Diamanti, and Thomas Wholean

I.      **Background**[2]

On the evening of June 29, 2001, Brown and Jeffrey Menard[3] were in the area of the Stonington town docks. According to the defendants, the Stonington town docks are clearly posted with signs prohibiting swimming or diving. Stonington Police were called to the docks by a lobsterman who suspected someone was poaching lobsters from his traps. Officers Peckham and Carr arrived and observed Brown in dive gear in the water near a retaining wall adjacent to the docks.

Peckham and Carr, and Brown's accounts of what happened next differ markedly. According to the defendants, Peckham and Carr instructed Brown to get out of the water and to bring with him the large bag he was carrying. However, according to Brown's deposition testimony, he was low on air, suffering from vertigo and unable to hear when he first surfaced. Brown testified that shortly after he surfaced he was blinded by a light being shined in his eyes. According to Peckham and Carr, Brown began to shout profanities at the officers. According to Brown, he did not know who was shining the light in his eyes, and admits that he used profanity in shouting for the light to be removed from his eyes.

Brown states that he then went back underwater, where he was able to move more easily in his dive gear. According to Brown, he surfaced again and was told that he was under arrest. Brown claims that this was the first time he realized that there were police officers present.

---

[2] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

[3] Menard also was a plaintiff in this action, but his claims have been resolved and withdrawn.

During his deposition, Brown testified that he asked Peckham and Carr why he was under arrest and told them that he had a legal lobster permit.

Brown emptied lobsters into the water out of the bag he was carrying.  According to Brown, he released the lobsters because they would have died and become inedible while he was at the police station.  According to the officers, Brown ignored their orders to stop emptying the bag and used profanity once again.

Once he had emptied his bag of lobsters, Brown emerged from the water.  At this point Carr "escorted" Brown off the sandy launch area of the dock.  According to Peckham and Carr, as Brown was emerging from the water he tripped and fell in the sandy launch area.  According to Brown, one of the officers grabbed his arm and shoved him into the rocks near the shore, causing bruising and other injuries.

Brown and one of the officers walked over to his truck.  Brown presented his lobster license and other documents to the officers.  More officers had arrived by this point.

According to Brown, the officers threw him against the police cruiser, hit him with a flashlight, and shook him.  Brown was placed under arrest and handcuffed.  According to Brown, the handcuffs were too tight and the officers refused to loosen the cuffs.  Also according to Brown, the officers continued to punch him and hit him with a flashlight after he was handcuffed, he was hit in the buttocks with the flashlight, he was concerned that he would be sodomized, and he began bleeding and his hands turned purple from the handcuffs.[4]  The officers deny that Brown was mistreated.

---

[4] While Brown does not know the names of the officers responsible for individual actions, he maintains that he would be able to recognize them, and claims Peckham and Carr were involved in the material claims of excessive force.

Brown was transported to the police station where he was charged with the state offenses of Breach of Peace (Conn. Gen. Stat. § 53a-181), Criminal Trespass (Conn. Gen. Stat. § 53a-109), Interfering with an Officer (Conn. Gen. Stat. § 53a-167(a)), Possession of Marijuana (Conn. Gen. Stat. § 21a-279(c)), Possession of Drug Paraphernalia (Conn. Gen. Stat. § 21a-267),[5] and Scuba Diving without Proper Flags (Conn. Gen. Stat. § 15-135(a)).  Brown was issued a court date and released on bond.

Following his arrest Brown filed a formal written complaint with the Stonington Police Department alleging that Peckham and Carr were abusive.  Captain Jerry Desmond was assigned to investigate Brown's complaint.  On July 19, 2001, Captain Desmond went to Brown's home regarding the complaint.  According to Brown, Captain Desmond broke his phone and "project[ed] violent behavior."  On July 30, 2001, Brown formally withdrew his complaint.  In his letter withdrawing the complaint, though, Brown indicated that the withdrawal is "occasioned by [the police department's] refusal to postpone [its] investigation of [Brown's] complaint to allow [him] to properly challenge the criminal charges against [him]."  Further, Brown indicated that he concluded that the police department was "incapable or unwilling to fairly, impartially and professionally conduct an investigation into the allegations" made in his police complaint.  According to Brown, his real reason for withdrawing the complaint was that he was intimidated and harassed by Captain Desmond.

Brown subsequently pled guilty to Breach of Peace and the other charges were apparently nolled.

---

[5] The drug charges were based on the officers' discovery of marijuana and a pipe in Brown's truck.

**II.     Summary Judgment Standard**

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); accord Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the nonmovant's claim. Celotex, 477 U.S. at 323-25; Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998).  Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor.  Anderson, 477 U.S. at 248; Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  A plaintiff may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible.  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).  Similarly, a plaintiff, as the nonmovant, "may not rely merely on allegations or denials" in its complaint to demonstrate the existence of a genuine issue of material fact.  Fed. R. Civ. P. 56(e).  Therefore, after discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it]

has the burden of proof," then summary judgment is appropriate. Celotex, 477 U.S. at 323. When addressing a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Maffucci, 923 F.2d at 982.

### III. Discussion

#### A. Excessive Force

Brown alleges that his Fourth and Fourteenth Amendment rights were violated when officers assaulted him at the time of his arrest. The defendants argue that there is no evidence to support this claim and that they are entitled to qualified immunity.

##### 1. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The policy underpinnings of this doctrine involve "strik[ing] a balance 'between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury.'" Locurto v. Safir, 264 F.3d 154, 162-63 (2d Cir. 2001) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 924-25 (2d Cir. 1991)). Simply stated, qualified

immunity ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier v. Katz, 533 U.S. 194, 206 (2001).

As the Second Circuit has summarized:

> A threshold question for triggering the qualified immunity doctrine is whether an official's conduct violated a constitutional right . . . . If so, we then must decide whether qualified immunity attaches. Qualified immunity is warranted if either (1) the official's actions did not violate clearly established law, or (2) even if the actions violated a clearly established law, the official was objectively reasonable in believing in the lawfulness of his actions. . . . The presumption in favor of finding qualified immunity is necessarily high, protecting all but the plainly incompetent or those who knowingly violate the law.

Connecticut v. Crotty, 346 F.3d 84, 101-02 (2d Cir. 2003) (citations and quotations omitted). See also Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995); McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999).

"[I]t was well established that the use of excessive force in the course of an arrest is constitutionally prohibited." Mickle v. Morin, 297 F.3d 114, 122 -123 (2d Cir. 2002). See also Graham v. Connor, 490 U.S. 386, 396-97 (1989). "[P]roper application [of the test of reasonableness under the Fourth Amendment] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," Mickle v. Morin, 297 F.3d at 122 (quoting Graham v. Connor, 490 U.S. at 396).

Where the circumstances are in dispute, and "contrasting accounts . . . present factual issues as to the degree of force actually employed and its reasonableness," a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity. Kerman v. City of

New York, 261 F.3d 229, 239 (2d Cir. 2001); see also id. at 240 (" '[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness' " (quoting Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999))); Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987).

### 2. Officers Peckham and Carr

Brown claims that Officers Peckham and Carr shoved him into rocks, shoved him into a police cruiser, beat him with a flashlight, and fastened his handcuffs too tightly. According to Brown, he suffered injuries as a result. Whether Brown tripped or was shoved, whether he was beaten with a flashlight, and whether his handcuffs were unnecessarily tight constitute genuine issues of material fact about whether the officers used unreasonable force. Although the defendants dispute these claims, Brown's version must be credited for the purposes of resolving summary judgment. It would likely not have been reasonable to shove Brown into the rocks or beat him with a flashlight, and there are genuine issues of material fact concerning whether Brown's right to be free from excessive force was violated. These factual issues also preclude summary judgment on the grounds of qualified immunity. Accordingly, summary judgment is denied as Brown's excessive use of force claims against Officers Peckham and Carr.

### 3. Lieutenant Curioso

Brown claims that Lieutenant Curioso was present for a portion of the time when he was arrested. Lieutenant Curioso maintains that he was not present or on duty when Brown was arrested. However, even according to Brown, Lieutenant Curioso was not present when any acts that might constitute excessive force occurred; Brown admits that Lieutenant Curioso did not arrive until after Brown had been removed from the shoreline, told the other officers to let Brown

go, and then left before Brown was handcuffed and claims he was beaten. "Personal involvement of the defendant in the alleged constitutional deprivations is prerequisite to an award of damages under § 1983." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (granting summary judgment in favor of guard who filed prisoner misbehavior report but did not participate in subsequent hearing at which prisoner alleged rights were violated). Accordingly, summary judgment is granted in favor of Lieutenant Curioso.

### B.  Freedom of Speech and Freedom to Petition for Redress of Grievances

Brown claims that he was forced to withdraw his police complaint because of harassment and intimidation and was denied his freedom to petition for redress of grievances.

"To prevail on a First Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff must prove by a preponderance of the evidence that: (1) the expression at issue was constitutionally protected, (2) the alleged retaliatory action adversely affected his constitutionally protected expression, and (3) a causal relationship existed between the constitutionally protected expression and the retaliatory action." Camacho v. Brandon, 317 F.3d 153, 160 (2d Cir. 2003)). See also Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001); Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir.1998) ; Estate of Morris ex rel. Morris v. Dapolito, 297 F. Supp.2d 680, 691 (S.D.N.Y. 2004). "[P]laintiff must show, with respect to the [second] element, that his First Amendment rights were 'actually chilled.'" Curley v. Vill. Of Suffern, 268 F.3d at 73. As to the third element: "Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." Id.

#### 1.  Captain Desmond

First, Brown's police complaint was a "petition for redress of grievances" and thus was

constitutionally protected. Second, in his deposition testimony Brown stated that "[he] withdrew the complaint because [he] was harassed by Captain Desmond." According to Brown, Desmond came to his house to investigate Brown's police complaint, harassed him, and broke his phone. Third, at his deposition Brown testified that the alleged harassment occurred during the course of an interview about the police complaint. The Court finds that this temporal nexus constitutes sufficient evidence of a causal relationship between Brown's complaint and the claimed harassment. Thus, for the purposes of summary judgment Brown has demonstrated genuine issues of material fact and the violation of a clearly established right. Further, no reasonable police officer could believe that it was lawful to harass a complainant to cause that person to withdraw his complaint. Thus, summary judgment is denied as to Brown's claim that his First Amendment rights were violated by Captain Desmond.

    2.    **Chief Erskine**

Brown claims that Chief Erskine is responsible for any violation of Brown's First Amendment rights because Chief Erskine assigned Captain Desmond to investigate Brown's claims. While "[a] supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort," a supervisor may be liable if "the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury." Poe v. Leonard, 282 F.3d 123, 134 (2d Cir. 2002). Brown has not presented evidence of any link between Chief Erskine's supervision and Captain Desmond's alleged harassing conduct. Accordingly, summary judgment is granted in favor of Chief Erskine.[6]

---

[6] It appears that the only claim Brown is pursuing against Chief Erskine is his First Amendment claim. The Court also finds that Brown has failed to present evidence linking Chief Erskine to the alleged excessive force used against Brown.

IV.     **Conclusion**

The defendants' motion for summary judgment [Dkt. # 82] is GRANTED in part and DENIED in part. It is DENIED as to Brown's excessive use of force claims against Officers Peckham and Carr, and as to his first amendment claim against Captain Desmond. It is GRANTED as to Brown's remaining claims.

SO ORDERED this   22nd   day of July 2008, at Hartford, Connecticut.

    /s Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**