UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD BROWN, ET AL | : | NO.: 3:01CV2374 (CFD) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF STONINGTON, ET AL | : | AUGUST 4, 2008 |

### MOTION FOR RECONSIDERATION RE RULING ON MOTION FOR SUMMARY JUDGMENT [DOC. 129]

**I.     BACKGROUND**

By way of motion dated March 25, 2005, the defendants moved for summary judgment as to the plaintiff, Edward Brown's, Complaint in its entirety [Doc. 82]. Thereafter, on July 16, 2008, the plaintiff filed his Objection to Defendant's Motion for Summary Judgment [Doc. 124]. In his opposition, the plaintiff voluntarily withdrew all claims except the following: (1) the unreasonable and excessive force claim as to Officers Michael Peckham and John Carr; (2) his First Amendment claim as to Captain Jerry Desmond; (3) his claim as to Officer Raymond Curioso; and (4) his claim against Chief David Erskine.

Pursuant to Local Rule 7(d), the defendants' Reply Brief was due to be filed on July 30, 2008. On July 22, 2008, the Court rendered its Ruling on Motion for Summary Judgment [Doc. 129]. In its ruling, the Court granted the defendants' summary judgment motion with regard to the claims directed to Officer Curioso and Chief

ORAL ARGUMENT IS NOT REQUESTED

Erskine. The Court denied the defendants' motion with regard to the Fourth Amendment claim against Officers Peckham and Carr, as well as the First Amendment claim against Captain Desmond.

The defendants now move for reconsideration as to the Court's denial of summary judgment regarding the First Amendment claim against Captain Desmond on the basis that the Court did not have before it relevant evidence and testimony by the plaintiff with regard to this claim as the Ruling on Motion for Summary Judgment was rendered prior to this evidence being presented to the Court by way of the defendants' Reply Brief.

## II.    **STANDARD OF REVIEW**

The standard for granting a motion for reconsideration is strict. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Such a motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Id. Reconsideration is justified: (1) where there has been an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

### III.    LAW AND ARGUMENT

In support of his opposition that he withdrew his civilian complaint as a result of "harassment" and "intimidation" by Captain Desmond rather than the reasons set forth in his July 30, 2001 written withdrawal of the complaint, the plaintiff proffered certain excerpts of his deposition testimony.  However, the testimony proffered by the plaintiff omitted relevant testimony regarding his clarification as to the exact conduct by Captain Desmond which he claimed amounted to a violation of his First Amendment rights.  The Court's Ruling on Summary Judgment was issued without the benefit of this relevant and additional testimony which the defendant intended to produce to the Court in its Reply Brief.  The availability of this new evidence warrants reconsideration of the Court's ruling as to the plaintiff's claim of a First Amendment violation.  See Virgin Atl. Airways, 956 F.2d at 1255.

####    A.    THE PLAINTIFF'S COMPLETE TESTIMONY REGARDING THE ALLEGED HARASSMENT, INTIMIDATION AND VIOLENT BEHAVIOR BELIES THE EXISTENCE OF ANY SUCH CONDUCT BY CAPTAIN DESMOND

In the excerpts of deposition testimony proffered by the plaintiff, he testified that he withdrew his civilian complaint "because [he] was harassed by Captain Desmond." (See Edward Brown Dep., **Exhibit A**, at 70.)  Specifically, the plaintiff claims that Captain Desmond was using the phone at his residence and, while speaking on the phone, he became upset and slammed the phone down.  (Id. at 71.)  The plaintiff goes on to state that he was further "harassed" and "intimidated" by Captain Desmond.  (Id.)

The plaintiff, however, conveniently omitted the subsequent pages of his deposition testimony in which he was questioned as to the precise nature of the alleged harassment, intimidation and violent behavior he claims Captain Desmond engaged in and which support his claim of a First Amendment violation.

In describing the precise nature of the alleged harassment, intimidation and violent behavior upon which he relies in support of his claim, the plaintiff testified as follows:

> Q: Okay. How were you harassed by Jerry Desmond?
>
> *A: Intimidation.*
>
> Q: How were you intimidated?
>
> *A: By him projecting violent behavior.*
>
> Q: What type of violent behavior?
>
> *A: Slamming the phone down and having the phone not work.*
>
> Q: Other than this slamming down of the phone, is there any other way that he harassed or intimidated you?
>
> A: They arrived at my house in an undercover state vehicle, trooper vehicle, and there was a Ledyard vehicle also parked in the front yard, in front of my house, my residence at 4 Marlene Drive, Ledyard, Connecticut.
>
> Q: How was this harassing?
>
> *A: It's intimidating because I never had police at my house, and I have neighbors where I live. Neighbors talk.*

(See Edward Brown Dep., **Exhibit A**, at 71-72.)

Pursuant to his own sworn testimony clarifying the exact behavior attributable to Captain Desmond, the plaintiff claims only that Captain Desmond slammed a phone down and parked a police vehicle in front of his residence. The plaintiff does not contend that Captain Desmond engaged in any other behavior which he deemed as verbally or physically harassing, intimidating or violent.

Accordingly, while the select pages of testimony proffered by the plaintiff in his opposition seek to convey that Captain Desmond entered his residence and proceeded to harass and intimidate him into withdrawing his complaint, his complete testimony unequivocally establishes that such conduct never occurred. By his own sworn testimony, the plaintiff's claim of First Amendment retaliation is premised entirely upon his claim that Captain Desmond slammed a phone down and parked his police vehicle in front of the plaintiff's residence.

**B.     THE PLAINTIFF IS UNABLE TO ESTABLISH A PRIMA FACIE CASE OF FIRST AMENDMENT RETALIATION PURSUANT TO HIS OWN SWORN TESTIMONY OF ALLEGED DE MINIMIS CONDUCT BY CAPTAIN DESMOND**

In order to establish a *prima facie* case of First Amendment retaliation, the plaintiff must establish three factors: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."

Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003); Marczeski v. Gavitt, 354 F.Supp.2d 190, 194 (D. Conn. 2005).

With regard to the second factor, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation . . . . Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003), quoting Dwares v. Walker, 239 F.3d 48, 491 (2d Cir. 2001).

Additionally, with regard to the final factor, the plaintiff bears the initial burden of showing that an improper motive played a substantial part in the defendant's action. See Scott, 344 F.3d at 288. In this regard, "[s]pecific proof of improper motivation is required in order for [a] plaintiff to survive summary judgment on a First Amendment retaliation claim." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). The plaintiff may not rely upon mere conclusory assertions of a retaliatory motive. See Washington v. County of Rockland, 373 F.3d 310, 321 (2d Cir. 2004). Rather, the plaintiff must put forth some tangible proof demonstrating that the claimed protected speech was a substantial motivating factor in the adverse action against him. Id.

In the instant matter, the plaintiff's complete testimony demonstrates that no constitutionally cognizable "adverse action" was taken against him. Pursuant to his own sworn testimony clarifying the exact behavior attributable to Captain Desmond,

6

the plaintiff claims only that Captain Desmond slammed a phone down and parked a police vehicle in front of his residence. The plaintiff does not contend that Captain Desmond engaged in any other behavior which he deemed as verbally or physically harassing, intimidating or violent.

    While the plaintiff may now claim that he subjectively perceived Captain Desmond's conduct in slamming down a phone and parking a police vehicle in front of his residence as a chill of his First Amendment rights, the standard for prevailing on his retaliation claim is otherwise.  As indicated above, the plaintiff must demonstrate that Captain Desmond's alleged conduct would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights in order to constitute an adverse action for purposes of his retaliation claim.  In cannot be said, under the circumstances of this matter, that an individual of ordinary firmness would be deterred from exercising his or her constitutional rights by virtue of the fact that Captain Desmond parked his police vehicle in front of their residence.  Similarly, it cannot be said that an individual of ordinary firmness would be deterred from exercising his or her constitutional rights by virtue of the fact that Captain Desmond slammed down a phone.  Such conduct without more is merely *de minimis* and, therefore, not within the ambit of constitutional protection.  See Davis, 320 F.3d at 353.

    Moreover, the plaintiff has wholly failed to proffer any evidence from which retaliatory motive or intent may be inferred.  As indicated previously, the plaintiff bears

the burden of putting forth specific tangible proof demonstrating that his civilian complaint was a substantial motivating factor in Captain Desmond's purported adverse action against him.  In fact the plaintiff fails to proffer any evidence whatsoever that Captain Desmond possessed any retaliatory animus against him.  Captain Desmond's conduct in parking a police vehicle in front of the plaintiff's residence at the time he came to speak with the plaintiff about the complaint, and slamming down the phone is insufficient to sustain an inference that Captain Desmond harbored any retaliatory animus against the plaintiff, or that he so parked his vehicle and slammed the phone in retaliation for the plaintiff's civilian complaint.

Accordingly as demonstrated above, the plaintiff is unable to establish a prima facie case of First Amendment retaliation pursuant to his own sworn testimony.  The defendants respectfully request, therefore, that the Court reconsider its ruling and render judgment in Captain Desmond's favor as to the First Amendment claim.

### C.  CAPTAIN DESMOND IS AFFORDED QUALIFIED IMMUNITY AS TO THE PLAINTIFF'S CLAIMS OF FIRST AMENDMENT RETALIATION

Notwithstanding that the plaintiff is unable to establish a prima facie case of First Amendment retaliation, Captain Desmond would be entitled to qualified immunity under the circumstances presented.  In its Ruling on Motion for Summary Judgment [Doc. 129], this Court concluded that Captain Desmond was not entitled to qualified immunity as no reasonable police officer could believe that it was lawful to harass a

complainant to cause that person to withdraw his complaint. However, as demonstrated above, the omitted portions of the plaintiff's own testimony demonstrate that no harassment or intimidation occurred. Rather, the sole conduct alleged is Captain Desmond's slamming down of a phone and parking his police vehicle in front of the plaintiff's residence. It certainly was not clearly established that such conduct by Captain Desmond amounted to an adverse action afforded constitutional protection, and reasonable officers could disagree as to the constitutionality of the same.

### 1. Qualified Immunity Standard

Qualified immunity shields public officials from suits for damages under 42 U.S.C. §1983, unless their actions violate clearly established rights of which an objectively reasonable official would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 127 (2d Cir. 1997). "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. [It] is an immunity from suit rather than a mere defense to liability . . . " Saucier v. Katz, 533 U.S. 194, 200-201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citations omitted; internal quotation marks omitted). The qualified immunity doctrine is "justified in part by the risk that the fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Thomas, 165 F.3d at 142 (internal quotation marks omitted), citing, Anderson v. Creighton, 483 U.S. 635,

638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, where a defendant seeks qualified immunity, a ruling on the issue should be made early in the process so as to avoid the costs and expenses of trial where the defense is dispositive. See Saucier, 533 U.S. at 200. The immunity would be "effectively lost if a case is erroneously permitted to go to trial." Id. at 201.

The Second Circuit has set forth the following three-step analysis in claims of qualified immunity:

> First, we must determine whether plaintiff has alleged a violation of a constitutional right. Then we consider if the violated right was clearly established at the time of the conduct . . . . Finally, if plaintiff had a clearly established, constitutionally protected right that was violated by the actions of the [defendants], he or she must demonstrate that defendants' actions were not objectively reasonable . . . . This three-step inquiry should typically be done in sequential order.

Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003) (internal citations omitted).

### 2. No Constitutional Violation Occurred

As demonstrated previously, in order to prevail on his First Amendment retaliation claim, the plaintiff must demonstrate that Captain Desmond's alleged conduct would have deterred a similarly situated individual of ordinary firmness from exercising his or her constitutional rights in order to constitute a constitutionally cognizable adverse action. In cannot be said, under the circumstances of this matter, that an individual of ordinary firmness would be deterred from exercising his or her

constitutional rights by virtue of the fact that Captain Desmond parked his police vehicle in front of their residence.  Similarly, it cannot be said that an individual of ordinary firmness would be deterred from exercising his or her constitutional rights by virtue of the fact that Captain Desmond slammed down a phone.  Such conduct without more is merely *de minimis* and, therefore, not within the ambit of constitutional protection.  See Davis, 320 F.3d at 353.

### 3. The Plaintiff's Claimed Rights Are Not Clearly Established

For purposes of the qualified immunity analysis, a right is "clearly established" when "[t]he contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . [T]he unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. at 640; see also, Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly break the law."); Mitchell v. Forsyth, 472 U.S. 511, 528 (1985) (officials are immune unless "the law clearly proscribed the actions they took.").  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202, citing Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

In determining whether a particular right was clearly established for purposes of assessing the applicability of qualified immunity, the Second Circuit has considered three factors:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant or official would have understood that his or her acts were unlawful.

Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991); see also Shecter v. Comptroller of New York, 79 F.3d 265, 271 (2d Cir. 1996).

In the instant matter, the law certainly was not clearly established that the mere parking of a police vehicle in front of the residence of a complainant in order to speak with him or her amounted to a violation of one's First Amendment rights, or otherwise would have deterred one from exercising their First Amendment rights. The law also was not clearly established that such parking of a police vehicle under the circumstances presented constituted a constitutionally cognizable adverse action within the ambit of the First Amendment.

Similarly, it was not clearly established that slamming down a telephone amounted to a violation of one's First Amendment rights, or would have deterred one from exercising the same. Nor was it clearly established that the mere act of slamming down of a phone amounted to a constitutionally cognizable adverse action within the ambit of the First Amendment.

### 4. Even If The Court Were To Conclude That The Plaintiff's Rights Were Clearly Established, Captain Desmond's Actions Were Objectively Reasonable

Even where a right is deemed to have been clearly established, qualified immunity would, nonetheless, protect the governmental actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged conduct. See Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995), citing Anderson, 483 U.S. at 641. Accordingly, a defendant is entitled to summary judgment pursuant to a defense of qualified immunity when:

> no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

Lennon, 66 F.3d at 420. A governmental actor's conduct is objectively unreasonable where "no [official] of reasonable competence could have made the same choice in similar circumstances." Id. at 420-21. Summary judgment is, therefore, appropriate "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances [presented]." Id. at 421.

In the instant matter, the plaintiff contends that Captain Desmond intimidated him in violation of his First Amendment rights by parking his police vehicle in front of the plaintiff's residence. It was certainly objectively reasonable for Captain Desmond

to believe that he was not violating the plaintiff's First Amendment rights by parking his police vehicle in front of the plaintiff's residence at the time he went to the residence to speak with the plaintiff about the complaint. At a minimum, reasonable officers would likely disagree as to the legality of parking a police vehicle in front of a complainant's residence when speaking with them about their complaint.

Likewise, the plaintiff contends that Captain Desmond harassed and intimidated him in violation of his First Amendment rights by slamming down the telephone. It cannot be said that it was objectively unreasonable for Captain Desmond to believe that his conduct in slamming down a telephone did not violate the plaintiff's First Amendment rights. At a minimum, reasonable officers would likely disagree as to whether the mere slamming down of a telephone constituted an adverse action so as to amount to a violation of one's First Amendment rights.

Accordingly Captain Desmond is entitled to qualified immunity as to the plaintiff's claim of First Amendment retaliation.

## IV.  **CONCLUSION**

WHEREFORE, the defendants respectfully request that the Court reconsider its ruling and enter judgment in favor of Captain Desmond as to the plaintiff's First Amendment retaliation claim.

                                    DEFENDANTS,
                                    TOWN OF STONINGTON, DAVID ERSKINE, JERRY DESMOND, RAYMOND CURIOSO, JOHN CARR AND MICHAEL PECKHAM

                                  By /s/ Beatrice S. Jordan
                                      Beatrice S. Jordan
                                      ct22001
                                      Howd & Ludorf, LLC
                                      65 Wethersfield Avenue
                                      Hartford, CT  06114-1121
                                      (860) 249-1361
                                      (860) 249-7665 (Fax)
                                      Juris No.:  28228
                                      E-Mail:  bjordan@hl-law.com

**CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 4th day of August, 2008.

John F. Geida, Esquire
Law Offices of Norman A. Pattis, LLC
649 Amity Road
P.O. Box 280
Bethany, CT 06524

                                            By /s/ Beatrice S. Jordan
                                            Beatrice S. Jordan